NATURAL GAS PIPELINE CO. *v.* SLATTERY ET AL.

No. 230. Argued November 8, 1937.—Decided December 6, 1937.

*Mr. Douglas F. Smith,* with whom *Messrs. William P. Sidley* and *J. J. Hedrick* were on the brief, for appellant.

*Mr. Harry R. Booth,* with whom *Messrs. Otto Kerner,* Attorney General of Illinois, *Montgomery S. Winning, James G. Skinner, W. Robert Ming, Jr.,* and *Abe L. Stein* were on the brief, for appellees.

MR. JUSTICE STONE delivered the opinion of the Court.

This appeal presents the question whether the court below rightly denied an application for an interlocutory

injunction restraining appellees, members of the Illinois Commerce Commission, from enforcing an order by which appellant was directed to open its records and accounts to inspection by the commission and to furnish certain statistical data for use in a proceeding pending before it. The proceeding was brought to fix rates charged for gas sold in Illinois by the Chicago District Pipe Line Company, an affiliated corporation.

Appellant, a Delaware corporation, sells in Illinois natural gas, which it transports through its pipe lines from Oklahoma to points in Illinois where, pursuant to a long term contract, it delivers the gas to the District Company, an Illinois corporation. The latter is engaged in intrastate commerce in Illinois where it sells the gas, which it purchases from appellant, to other companies which in turn distribute the gas to consumers within the state. The rates of the District Company are subject to regulation by the commission, as provided by the Illinois Public Utilities Act. All its shares of stock are owned by the Natural Gas Investment Company, an Illinois corporation, which owns 26.63% of the outstanding shares of appellant. Of the eight or nine directors of appellant, at all times since its incorporation, two have been members of the board of directors of either the Investment Company or of corporations wholly controlling it or the District Company, through stock ownership. The commission has found that the president of the District Company is president and director of the Investment Company and a director of appellant, and that a director of the District Company and of the Investment Company is a vice-president and director of appellant.

Section 8a (2) of the Illinois Public Utilities Act, Ill. Rev. Stat. 1937, c. 111⅔, § 8a, gives the commission jurisdiction over "affiliated interests having transactions, other than ownership of stock and receipt of dividends

thereon, with public utilities under the jurisdiction of the Commission, to the extent of access to all accounts and records of such affiliated interests relating to such transactions . . . and to the extent of authority to require such reports with respect to such transactions to be submitted by such affiliated interests, as the Commission may prescribe." The subsection defines "affiliated interests" as meaning:

"(c) Every corporation, ten per centum or more of whose voting capital stock is owned by any person or corporation owning ten per centum or more of the voting capital stock of such public utility, . . .

"(f) Every corporation which has one or more elective officers or one or more directors in common with such public utility." [1]

In November, 1936, the commission, in the exercise of its authority under the Act, began a proceeding to which the District Company was, and appellant was not, a party, to determine whether the rates charged by the District Company should be reduced. After hearing evidence, the commission found that appellant was an affiliate of the District Company and that in order to fix reasonable rates for the sale of gas by the latter, inquiry was

---

[1] Section 8 (a) (2) also provides that "affiliated interests" mean:

"(g) Every corporation or person which the Commission may determine as a matter of fact after investigation and hearing is actually exercising any substantial influence over the policies and actions of such public utility even though such influence is not based upon stock holding, stockholders, directors or officers to the extent specified in this section.

"(h) Every person or corporation who or which the Commission may determine as a matter of fact after investigation and hearing is actually exercising such substantial influence over the policies and actions of such public utility in conjunction with one or more other corporations or persons with which or whom they are related by ownership or blood relationship or by action in concert that together they are affiliated with such public utility within the meaning of this section even though no one of them alone is so affiliated."

necessary into its operating charges including the cost of gas purchased from appellant. The commission accordingly made an order, the validity of which is assailed here, directing that appellant make available for examination by the commission all of its accounts and records relating to transactions between it and the District Company. It further ordered that appellant file with the commission a report of the cost of property used in, and a statement of income and expenses in connection with, supplying gas to the District Company; or, in the alternative, that it report to the commission a statement of the cost of all properties used by it in the business of transporting and selling natural gas, together with a statement of the income and expenses of such operations.

In the present suit in equity, brought in the District Court for northern Illinois, petitioner prayed that appellees be enjoined from enforcing the order and that it be set aside as made without authority of state law, and on the further grounds that the statute and order are invalid because they violate the commerce, equal protection and due process clauses of the Federal Constitution. The case comes here on appeal, Judicial Code, § 266, from the order of the district court of three judges, which denied an interlocutory injunction. It held that appellant had failed to show that the order infringed any constitutional immunity or that appellant would suffer irreparable injury by reason of the action of the commission.

The court thought that the commission, in conducting the pending rate proceeding, and in investigating the reasonableness of the operating costs of the District Company, was entitled to the information it sought, which might be disclosed by an examination of appellant's accounts and records; that for that purpose the commission would have been entitled to compel their production by subpoena; and that as appellant had failed

to present to the commission any objection to the breadth of the order, or to the use of an order rather than a subpoena to secure the information, no case was made for the interposition of a court of equity.

*First.* The appellant assails the statute as unconstitutional so far as it authorizes the commission to obtain from appellant's books and records any information bearing upon the reasonableness of the price of gas sold to the District Company. Appellant recognizes that the absence of "arm's length bargaining" between contracting affiliates is sufficient to support such an inquiry, and may be an adequate ground, in fixing the reasonable rates of a public utility company, for disregarding the price at which it purchases the commodity distributed. See *Western Distributing Co.* v. *Public Service Comm'n,* 285 U. S. 119. But it is said that here the statute infringes the commerce clause and the Fourteenth Amendment because it authorizes the inquiry without proof of common control or want of arm's length bargaining; that the Constitution forbids all inquiry as to the relations between the two companies and the prices at which the gas is sold by one to the other, in advance of proof of their common control or other evidence that the bargaining was not at arm's length. Assuming, without deciding, that the breadth of this attack relieves appellant of the necessity of applying to the commission to vacate its order before seeking equitable relief in the federal courts, see *Hollis* v. *Kutz,* 255 U. S. 452; cf. *United States* v. *Sing Tuck,* 194 U. S. 161, 167, we think that the objection is not substantial.

We can find in the commerce clause and the Fourteenth Amendment no basis for saying that any person is immune from giving information appropriate to a legislative or judicial inquiry. A foreign corporation engaged exclusively in interstate commerce within the state is amenable to process there as are citizens and corporations

engaged in local business. *International Harvester Co. v. Kentucky,* 234 U. S. 579. It is similarly subject to garnishment and writ of attachment. *Davis* v. *Cleveland, C., C. & St. L. Ry. Co.,* 217 U. S. 157. It can be deemed to be no less subject, on command of a state tribunal, to the duty to give information appropriate to an inquiry pending there. The present investigation is not a regulation of interstate commerce and it burdens the commerce no more than the obligation owed by all, even those engaged in interstate commerce, to comply with local laws and ordinances, which do not impede the free flow of commerce, where Congress has not acted. *Smith* v. *Alabama,* 124 U. S. 465; *Red "C" Oil Co.* v. *Board of Agriculture,* 222 U. S. 380; *Minnesota Rate Cases,* 230 U. S. 352, 402–412; *Clyde Mallory Lines* v. *Alabama ex rel. State Docks Comm'n,* 296 U. S. 261, and cases cited.

This Court has often recognized that the reasonableness of the price at which a public utility company buys the product which it sells is an appropriate subject of investigation when the resale rates are under consideration, and that any relationship between the buyer and seller which tends to prevent arm's length dealing may have an important bearing on the reasonableness of the selling price. *United Fuel & Gas Co.* v. *Railroad Commission,* 278 U. S. 300, 320; *Smith* v. *Illinois Bell Tel. Co.,* 282 U. S. 133, 144; *Western Distributing Co.* v. *Public Service Comm'n, supra,* 124; *Dayton Power & L. Co.* v. *Public Utilities Comm'n,* 292 U. S. 290. We have not said, nor do we perceive any ground for saying, that the Constitution requires such an inquiry to be limited to those cases where common control of the two corporations is secured through ownership of a majority of their voting stock. We are not unaware that, as the statute recognizes,[2] there are other methods of control of a corpora-

---

[2] See footnote 1, *supra.*

tion than through such ownership. Common management of corporations through officers or directors, or common ownership of a substantial amount, though less than a majority of their stock, gives such indication of unified control as to call for close scrutiny of a contract between them whenever the reasonableness of its terms is the subject of inquiry. In these circumstances appellant can hardly object to the attempted inquiry into the fairness of the price. Cf. *Corsicana National Bank* v. *Johnson,* 251 U. S. 68, 90, and cases cited; *Geddes* v. *Anaconda Copper Mining Co.,* 254 U. S. 590, 599; *Western Distributing Co.* v. *Public Service Comm'n, supra,* 124; *Globe Woolen Co.* v. *Utica Gas & Elec. Co.,* 224 N. Y. 483; 121 N. E. 78. The price itself may be found to be so exorbitant as to persuade that the bargaining was not at arm's length. *Corsicana National Bank* v. *Johnson, supra.* We cannot say that the Illinois statute is subject to any constitutional infirmity in so far as it demands access to the books and accounts of appellant or requires production of the information which the order seeks.

*Second.* Appellant also challenges the order of the commission as a first step in the direction of unconstitutional action. But appellant is not a party to the pending proceeding, whose ultimate concern is the rates of the District Company. In that proceeding the commission can make no order binding on appellant with respect to its own rates or its contract. Cf. *State Corporation Comm'n* v. *Wichita Gas Co.,* 290 U. S. 561. There is no contention that the commission threatens to make any order modifying or cancelling either. The statute does not prescribe the effect which the commission is to give to the information sought. Assuming without deciding that it cannot rightly be made the basis for disregarding the price at which appellant sells gas to the District Company, unless as the result of the inquiry there ap-

pears to be in some form an effective single control of the two companies, we cannot also assume that the commission will arbitrarily make such use of it in fixing the District Company's rates. It will be time enough to challenge such action of the commission when it is taken or at least threatened, *First National Bank* v. *Albright,* 208 U. S. 548; *Dalton Adding Machine Co.* v. *State Corporation Comm'n,* 236 U. S. 699, and to consider whether appellant has standing to make the challenge. The commission is not to be enjoined from seeking information whose probable usefulness is established, as it is in this case, by the statutory prerequisite of partial community of management or stock ownership.

*Third.* Appellant urges that, in requiring statistical reports, the expense of whose preparation is said to be great, the order transcends statutory authority, or exercises it so arbitrarily as to place an unconstitutional burden on commerce and infringe the Fourteenth Amendment. It is said that equity alone can afford adequate relief because of the cumulative penalties for failure to comply with the order. See §§ 76 and 77 of the Act.

We have no occasion to consider the merits of these objections. It suffices to say that the statute itself provides an adequate administrative remedy which appellant has not sought. By §§ 64 and 65 of the Act the commission was authorized on its own motion or on application of appellant to order a hearing to ascertain whether the present order was "improper, unreasonable or contrary to law." Section 67 authorizes the commission at any time, upon proper notice and hearing, to "rescind, alter or amend any . . . order or decision made by it." We see no reason, and appellant suggests none, for rejecting the trial court's ruling that the commission, if asked, could have modified its order, or for concluding that the commission was without authority to suspend or postpone

the date of the effective operation of the order so as to avoid the running of penalties, pending application for its modification. *Porter* v. *Investors Syndicate,* 286 U. S. 461, 470; 287 U. S. 346.

As the Act imposes penalties of from $500 to $2,000 a day for failure to comply with the order, any application of the statute subjecting appellant to the risk of the cumulative penalties pending an attempt to test the validity of the order in the courts and for a reasonable time after decision, would be a denial of due process, *Ex parte Young,* 209 U. S. 123, 147; *Missouri Pacific Ry. Co.* v. *Tucker,* 230 U. S. 340, 349; see *Wadley Southern Ry. Co.* v. *Georgia,* 235 U. S. 651, 659, but no reason appears why appellant could not have asked the commission to postpone the date of operation of the order pending application to the commission for modification. Refusal of postponement would have been the occasion for recourse to the courts. Compare *Oklahoma Natural Gas Co.* v. *Russell,* 261 U. S. 290, 293, with *Prentis* v. *Atlantic Coast Line,* 211 U. S. 210; *Ex parte Young, supra,* 156. But appellant did not ask postponement.

A temporary injunction was not necessary to protect appellant from penalties pending final determination of the suit. The commission agreed not to enforce the order before the decision of the lower court on the application for interlocutory injunction. In order to give appellant opportunity to appeal here the district court stayed, for thirty days, its order denying an injunction, and by an order of a Justice of this Court the operation of the commission's order and the running of penalties were enjoined pending the disposition of the cause here.

The rule that a suitor must exhaust his administrative remedies before seeking the extraordinary relief of a court of equity, *Goldsmith* v. *U. S. Board of Tax Appeals,* 270 U. S. 117, 123; *Porter* v. *Investors Syndicate, supra; Petersen Baking Co.* v. *Bryan,* 290 U. S. 570,

575; see *United States* v. *Illinois Central R. Co.,* 291 U. S. 457, 463, 464–466, is of especial force when resort is had to the federal courts to restrain the action of state officers, *Matthews* v. *Rodgers,* 284 U. S. 521, 525–526; *Porter* v. *Investors Syndicate,* 286 U. S. 461; 287 U. S. 346; cf. *Central Kentucky Natural Gas Co.* v. *Railroad Commission,* 290 U. S. 264, 271; *Di Giovanni* v. *Camden Fire Ins. Assn.,* 296 U. S. 64, and the objection has been taken by the trial court. *Matthews* v. *Rodgers, supra.*

The extent to which a federal court may rightly relax the rule where the order of the administrative body is assailed in its entirety, rests in the sound discretion which guides exercise of equity jurisdiction. *Hollis* v. *Kutz, supra; United States* v. *Abilene & Southern Ry. Co.,* 265 U. S. 274, 282; cf. *United States* v. *Sing Tuck, supra.* But there are cogent reasons for requiring resort in the first instance to the administrative tribunal when the particular method by which it has chosen to exercise authority, a matter peculiarly within its competence, is also under attack, for there is the possibility of removal of these issues from the case by modification of its order. Here the commission had authority to pass upon every question raised by the appellant and was able to modify the order. In such circumstances the trial court is free to withhold its aid entirely until administrative remedies have been exhausted.

*Affirmed.*