UNITED FUEL GAS CO. v. PUBLIC UTILITIES COMMISSION OF OHIO, et al.

No. 1141.

District Court, S. D. Ohio, E. D.

Oct. 2, 1941.

Harold A. Ritz, of Charleston, W. Va., and Freeman T. Eagleston, of Columbus, Ohio, for plaintiff.

Thomas J. Herbert, Atty. Gen. of Ohio, and Kenneth L. Sater, Sp. Counsel for The Commission, of Columbus, Ohio, for defendant Public Utilities Commission of Ohio and others.

W. L. Dickey, of Portsmouth, Ohio, for defendant City of Portsmouth, Ohio.

John H. Beasley, of Terre Haute, Ind., for defendant Portsmouth Gas Co.

Before ALLEN, Circuit Judge, and NEVIN and UNDERWOOD, District Judges.

PER CURIAM.

Plaintiff, a West Virginia corporation, is a producer and purchaser of natural gas in that state. Defendants are the Public Utilities Commission of Ohio (hereinafter called the Commission); certain named state officials acting for it and on its behalf; the City of Portsmouth, Ohio, and Portsmouth Gas Company, an Ohio corporation. Due to their tenure of office and for various reasons changes have occurred from time to time in respect to individual defendants but proper substitutions have been made.

In 1931 plaintiff entered into a contract with defendant Portsmouth Gas Company for sale to that company of a supply of natural gas which Portsmouth Gas Company in turn sold and distributed to its customers in Portsmouth, Ohio. Portsmouth Gas Company is not a producer of natural gas and has no available gas of its own. That contract ran for five years. It expired on November 1, 1936. Prior to its expiration, the date thereof was extended, however, to November 1, 1937 (Amended Complaint and Stipulation of parties both filed November 20, 1936), and thereafter to November 1, 1941 (Second, Amended Complaint filed March 8, 1939 and Third Amended Complaint filed April 8, 1941).

After the two gas companies had entered into their contract, the City of Portsmouth passed an ordinance fixing certain rates for the distribution of natural gas in that city. Not content with those rates, the Portsmouth Gas Company appealed to the Public Utilities Commission of Ohio, for its determination of the question presented, the Commission found that it was necessary to bring plaintiff herein into the proceedings before it, and it was so ordered.

Plaintiff appeared before the Commission and moved to be dismissed but its motion was denied.

After a hearing, the Commission found on April 18, 1935, that the rates fixed by

the city ordinance of the City of Portsmouth "are manifestly unjust, unreasonable and insufficient to yield reasonable compensation" to the Portsmouth Gas Company, and it further found and ordered on said date, as follows:

"The Commission further finds that the furnishing of natural gas by The United Fuel Gas Company to The Portsmouth Gas Company for resale to consumers within the City of Portsmouth, Ohio, is a public utility service within the meaning of Section 614-2, General Code of Ohio, and that the rates to be charged therefor are subject to the jurisdiction of this Commission.

"The Commission further finds that, in the absence of proof by the United Fuel Gas Company of a just and reasonable rate or charge to be maintained, imposed, charged and collected by it for the furnishing of natural gas to The Portsmouth Gas Company for distribution to consumers for public and private use in said City, it is unable to determine the just and reasonable rates to be substituted for the rates and charges fixed and prescribed by said ordinance which it has found herein to be unjust and unreasonable. It is, therefore,

"Ordered, That the said United Fuel Gas Company be, and hereby it is notified, directed and required to proceed, forthwith, and with all diligence to prepare and, within ninety days from the date hereof, to complete a presentation of all pertinent and relevant testimony and exhibits tending to prove a reasonable and just rate to be charged by it to The Portsmouth Gas Company for the furnishing of natural gas for distribution within the City of Portsmouth, Ohio, in conformity to the provisions of General Session Order of this Commission adopted and promulgated under date of March first, 1934. * * *'"

On May 14, 1935, plaintiff herein filed a "Petition for Rehearing" before the Commission on the order, in so far as it was affected thereby, entered on April 18, 1935.

Subsequently, to-wit: on May 29, 1935, the Commission denied this application for a rehearing and its order of April 18, 1935, was left in full force and effect. However, along with its denial of the application and in the same order, the Commission ordered as follows: "That the findings made and entered herein upon April eighteenth, 1935, be, and hereby the same are supplemented with the following additional findings of fact, to-wit: That the gas being delivered to The Portsmouth Gas Company, and which has been delivered to it under the contract hereinbefore referred to, is produced, and has been produced during all of said time, in the States of West Virginia and Kentucky, and is conveyed, together with other gas from the same sources, through a pipe line in a continuous flow from said points of production in West Virginia and Kentucky to a point in the State of Ohio, where same is delivered to The Portsmouth Gas Company; that out of the said pipe line said The United Fuel Gas Company also delivers certain other gas from the same sources to a distribution system supplying the town of New Boston, in the State of Ohio, and the City of Ironton, in the State of Ohio, and that the distribution of natural gas in said town of New Boston and the said City of Ironton, aforesaid, is made to the inhabitants of the said municipalities by said The United Fuel Gas Company through a distribution system owned by said The United Fuel Gas Company; and

"That the United Fuel Gas Company and The Portsmouth Gas Company have no connection with each other by way of interlocking directors or unity of interest; neither has any associate, affiliate or parent company of either of said companies, The United Fuel Gas Company and The Portsmouth Gas Company, any such relation, but the two companies are entirely separate and distinct from each other and are so operated.

"The Commission further finds that the following findings set forth and adopted in said findings as so adopted upon April eighteenth, 1935, to-wit: 'The Commission further finds that the furnishing of natural gas by The United Fuel Gas Company to The Portsmouth Gas Company for resale to consumers within the City of Portsmouth, Ohio, is a public utility service within the meaning of Section 614-2, General Code of Ohio, and that the rates to be charged therefor are subject to the jurisdiction of this Commission' should be, and hereby the same is modified, amended and supplemented to read as follows, to-wit:

" 'The Commission further finds that the furnishing of natural gas by the United Fuel Gas Company to The Portsmouth Gas Company for resale to consumers within the City of Portsmouth, Ohio, is a public utility service within the meaning

of Section 614-2, General Code of Ohio; that the rates to be charged therefor are subject to the jurisdiction of this Commission; that such jurisdiction includes the right to regulate the rate or price to be charged for such service, and that the exercise of such jurisdiction is necessary for a determination of the matters and things herein at issue before this Commission.' "

Thereafter, on July 3, 1935, plaintiff filed its bill of complaint herein praying, for the reasons alleged in the bill, inter alia, "That the orders of said The Public Utilities Commission of Ohio of April 18, 1935, and May 29, 1935, requiring this plaintiff to prove the cost of producing and delivering the natural gas furnished by it to the defendant Portsmouth Gas Company be declared null and void and of no effect." and that the Commission and certain of the defendants, acting for it and on its behalf, "be enjoined, inhibited and restrained from regulating or attempting to regulate the transactions between this plaintiff and the said defendant Portsmouth Gas Company under the contract referred to herein, and that, pending the determination of its right to such permanent injunction, an interlocutory injunction be granted in accordance with the foregoing."

Plaintiff prayed also for a temporary restraining order and, on July 3, 1935, a temporary restraining order as prayed for was signed and issued by the late Hon. Benson W. Hough,[1] then United States District Judge for the Southern District of Ohio.

In its bill of complaint, plaintiff sets out several reasons upon any or all of which it claims it is entitled to the relief prayed for.

At the outset and primarily, however, it challenges the jurisdiction of the Commission, claiming that the Commission "is without any jurisdiction to make such orders or requirements of this plaintiff"; and "that the statute under which it is acting, giving it such power as construed by it, violates the commerce clause of the Constitution of the United States * * *."

In their answer, filed July 30, 1935, the Commission and the other defendants named herein as acting for and in its behalf assert that the Commission does have jurisdiction; that the statute referred to is constitutional, and that the orders and directions of the Commission are in all respects proper and according to law.

On September 23, 1935, a stipulation, signed by counsel for the respective parties thereto, was filed, reading as follows: "It is stipulated by the parties hereto that the findings of fact by The Public Utilities Commission of Ohio as contained in its order of May 29, 1935, a copy of which is filed as Exhibit G with the bill, are the facts in regard to the natural gas and its movement pertinent to the consideration of the question involved in this case and the said findings of fact by the said The Public Utilities Commission may be treated by the Court as admissions of the parties in regard thereto * * *."

On November 20, 1936, plaintiff filed an Amended Bill of Complaint and on March 8, 1939, its Second Amended and Supplemental Bill of Complaint, praying in each instance as in its original bill.

On March 10, 1939, a stipulation, signed by all the parties, was filed herein, reading as follows: "It is hereby stipulated by the parties to this proceeding that the facts stated in the second amended bill of complaint herein are true and may be considered by the court as having been proven herein. This does not apply to Conclusions of Law."

On April 8, 1941, plaintiff filed a Third Amended and Supplemental Bill of Complaint reiterating therein the prayer of its original and amended bills.

On April 24, 1941, defendants, Public Utilities Commission of Ohio, George C. McConnaughey, Chairman of said Commission, Dennis F. Dunlavy and Harry M. Miller, members, Thomas J. Herbert, Attorney General of the State of Ohio, and Kenneth L. Sater, Special Counsel for said Commission, filed a motion to dismiss the Third Amended Bill of Complaint for the reasons and on the grounds set forth in the motion. This motion was overruled on July 8, 1941.

---

[1] Subsequently, the cause came on for hearing and argument before a statutory three-judge court, of which Judge Hough was a member. Judge Hough died, however, before the case was decided necessitating a re-argument at a later date before the three-judge court, as now constituted.

On July 28, 1941, defendants filed an application for leave to file their answer to plaintiff's third amended and supplemental complaint. On August 4, 1941, leave was granted defendants so to do, and on the same day, to-wit: August 4, 1941, defendants filed their answer.

The cause is now before the court on plaintiff's Third Amendment and Supplemental Bill of Complaint; defendants' answer thereto (just referred to) and the record, including the stipulation (above) of the parties as to the facts, which as alleged in the Third Amended Bill are in substance the same as stated in the Second Amended Bill (and in the original bill and amended bill as well, except for a reference to the "National Gas Act" in the Second Amended Bill,) except that it is recited in the Third Amended Complaint that the contract between plaintiff and defendant Portsmouth Gas Company referred to in the Second Amended Complaint has been continued by the parties thereto "upon the same terms and conditions as provided by said last extension."

In their brief (pp. 5, 6), counsel for the Commission and those defendants acting for it and on its behalf say

"It may be conceded upon the basis of the record taken before The Commission that the transportation into the State of Ohio by pipe lines of gas produced by the Plaintiff in West Virginia and Kentucky is interstate commerce. It may be further conceded that the primary power to regulate the transportation of gas in interstate commerce rests with the Congress of the United States and that the Congress of the United States has not yet seen fit to exercise that power. It may be admitted further that if the mere fact that the transportation of such gas in interstate commerce precludes the state from exercising any jurisdiction thereover despite the fact that Congress has not seen fit to exercise its powers, and despite the fact that the exercise of such jurisdiction may be necessary in the interests of local regulation and despite any other facts which may be presented in a particular case, then The Public Utilities Commission of Ohio has no jurisdiction over the United Fuel Gas Company in the case that is here presented.

"On the other hand, if the interstate transportation of gas does not of itself preclude state regulation in a proper case where the nature of the regulation is primarily local in character, and where it is essential to the exercise of the regulatory functions of a public service commission, and where the particular facts of the case warrant the exercise of the power conferred by the legislative enactment in the state in question, and where Congress has failed to exercise its paramount authority, then the orders of The Public Utilities Commission of Ohio which are here sought to be enjoined may be sustained."

The sale and delivery of natural gas to the Portsmouth Gas Company is thus clearly interstate commerce, and compilation of voluminous data has been demanded for use in a proceeding by the State Commission to determine the fair and reasonable rate to be collected by the local distributing company with which the plaintiff has contracted to sell its product and services for a definite period at a definite price. The two contracting parties are entirely separate and distinct from each other and are so operated. In view of such relationship and the nature of the inquiry before the Ohio Commission it is believed that the jurisdiction sought to be asserted falls outside the orbit of state regulation now permissible.

Since this suit was instituted, the Congress of the United States, to-wit, on June 21, 1938, passed an Act known as the "Natural Gas Act" entitled "An act to regulate the transportation and sale of natural gas in interstate commerce, and for other purposes." Title 15, §§ 717–717w, U.S.C.A. c. 556, Sec. 1, 52 Stat. 821. Among others, the Natural Gas Act contains the following provisions:

"Section 1. * * * (b) The provisions of this Act shall apply to the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or any other use, and to natural-gas companies engaged in such transportation or sale, but shall not apply to any other transportation or sale of natural gas or to the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas."

"Sec. 4. (a) All rates and charges made, demanded, or received by any natural-gas company for or in connection with the transportation or sale of natural gas subject to the jurisdiction of the Com-

mission * * * shall be just and reasonable * * *."

"Sec. 5. (a) Whenever the Commission * * * shall find that any rate, charge, or classification demanded, observed, charged, or collected by any natural-gas company * * * subject to the jurisdiction of the Commission * * * is unjust, unreasonable, unduly discriminatory, or preferential, the Commission shall determine the just and reasonable rate, charge, classification, rule, regulation, practice, or contract to be thereafter observed and in force, and shall fix the same by order * * *.

"Sec. 5. * * * (b) The Commission upon its own motion, or upon the request of any State Commission, whenever it can do so without prejudice to the efficient and proper conduct of its affairs, may investigate and determine the cost of the production or transportation of natural gas by a natural-gas company in cases where the Commission has no authority to establish a rate governing the transportation or sale of such natural gas."

"Sec. 6. (a) The Commission may investigate and ascertain the actual legitimate cost of the property of every natural-gas company, the depreciation therein, and, when found necessary for rate-making purposes, other facts which bear on the determination of such cost or depreciation and the fair value of such property.

"(b) Every natural-gas company upon request shall file with the Commission an inventory of all or any part of its property and a statement of the original cost thereof, and shall keep the Commission informed regarding the cost of all additions, betterments, extensions, and new construction."

Natural Gas Pipeline Co. v. Slattery, 302 U.S. 300, 58 S.Ct. 199, 82 L.Ed. 276, held a state statute which demands access to books and accounts of a pipe line company selling natural gas in interstate commerce and requires production of the information sought, to be not unconstitutional. That case involved a transaction between public utilities which were affiliates. Here the plaintiff and the defendant Portsmouth Gas Company are conceded by the defendant Commission to have no connection with each other by way of interlocking directorates, unity of interest, or affiliation. They are entirely separate and distinct from each other and are so operated. Their dealings were and are at

"arm's length." Cf. Natural Gas Pipeline Co. v. Slattery, supra, 302 U.S. at page 306, 58 S.Ct. 199, 82 L.Ed. 276. This is an important distinction and completely differentiates the operation herein involved, from that held to be subject to examination in the Slattery case. However, it is not the sole differentiating feature between the two cases, for the Slattery case was decided prior to the enactment of the "Natural Gas Act," supra, the provisions of which, in our opinion, compel the issuance of the injunction prayed for.

Regardless of the right or jurisdiction of the Ohio Commission to issue the orders herein complained of on April 18, 1935, and May 29, 1935, it was deprived of any further jurisdiction by the passage of the Natural Gas Act on June 21, 1938. The transactions involved are squarely covered by the Natural Gas Act, constituting as they do "the sale in interstate commerce of natural gas for resale for ultimate public consumption" Sec. 1(b). Under this statute the Public Utilities Commission of Ohio might have filed a complaint charging that the rates made by the United Fuel Gas Company in the sale of its gas to the Portsmouth Gas Company are unjust, unreasonable, or unduly discriminatory or preferential, and the Federal Commission thereupon would have been empowered to determine the just and reasonable contract rate to be thereafter observed and enforced. Section 5(a). The Federal Power Commission is required to "make available" to the Ohio Commission such information and reports as may be of assistance in state regulation, and may upon request from the Ohio Commission make available as witnesses any of its own trained experts. Section 17(c). We think that these provisions are significant.

Prior to the enactment of the Natural Gas Act it was permissible for the state to regulate local features of interstate commerce in gas. Pennsylvania Gas Co. v. Public Service Commission, 252 U.S. 23, 29, 40 S.Ct. 279, 64 L.Ed. 434; East Ohio Gas Co. v. Tax Commission of Ohio, 283 U.S. 465, 51 S.Ct. 499, 75 L.Ed. 1171. Since the federal statute has been enacted, giving to the Federal Power Commission the power to fix the contract rate between plaintiff and the Portsmouth Gas Company, the Congress has occupied the field and the power is exclusive in the Federal Power Commission. The right to conduct investigations as to contracts for sale of gas

in interstate commerce, which is an incident to the rate-making power, is also exclusively confided to the Federal Power Commission. We conclude that since the date of the passage of the Natural Gas Act the Ohio Commission and these defendants acting for it and on its behalf have been and are without legal right or authority to enforce the orders of the Commission entered April 18, 1935, and May 29, 1935.

Upon the record here the court finds, therefore, that an interlocutory injunction should be granted enjoining defendant Public Utilities Commission of Ohio and each and all other defendants herein acting for it or on its behalf from enforcing or seeking to enforce, or execute, the orders of the Commission entered by it on April 18, 1935, and May 29, 1935, against plaintiff herein.

The court adopts as its findings of fact herein the findings of fact by the Public Utilities Commission of Ohio as contained in its order of May 29, 1935, to the extent and as set forth and referred to by the parties to the Stipulation filed herein on September 23, 1935.

Each party to pay its own costs.

Counsel may prepare and submit an order accordingly.