**ROOF et al. v. CONWAY et al.**
No. 9229.

Circuit Court of Appeals, Sixth Circuit.

Feb. 10, 1943.

Carl Tresemer, of Columbus, Ohio (Binns & Tresemer and Ralph W. Sanborn, all of Columbus, Ohio, and Richard A. Lindemann, of Delphos, Ohio, on the brief), for appellants.

Homer C. Corry, of Springfield, Ohio (Homer C. Corry and John C. Durfey, both of Springfield, Ohio, on the brief), for appellees.

Before HAMILTON, MARTIN and McALLISTER, Circuit Judges.

MARTIN, Circuit Judge.

Determination of the issues involved on this appeal necessitates disentanglement of intercorporate relationships, and study of the case history of separate but intertwined receiverships. Bringing forward forthwith the background of this complex controversy by chronological narrative of relevant events would seem the best adaptable method of statement of the case.

Before the laws of Ohio required certificates of public convenience and necessity for the operation of motor bus lines, the appellants, Roof, West and Batchick, were engaged in the business of transporting passengers by motor bus. Roof and West operated passenger busses between Dayton and Springfield; Batchick operated between Springfield and Columbus. After the enactment of the Freeman-Collister Act in 1923 (now as amended being Section 614-87 et seq., of Ohio General Code), appellants applied for and obtained from the Public Utilities Commission of Ohio certificates of public convenience and necessity to continue the operation of their respective motor transportation lines.

The interurban electric railway line of the Indiana, Columbus and Eastern Traction Company, which was being operated in Federal receivership in the Northern District of Ohio, was parallel and competitive with the bus lines of the appellants in their respective territories. There were also other competitors holding certificates of public convenience and necessity.

The receiver of the Indiana, Columbus and Eastern Traction Company caused to be organized under the laws of Ohio a corporation originally chartered as the Dayton and Zanesville Transportation Company and, by charter amendment, subsequently named, first Dayton and Columbus Transportation Company, and later Cincinnati and Lake Erie Bus Company, hereinafter in this opinion frequently designated "the subsidiary corporation," or the "subsidiary." The entire capital of this subsidiary corporation was supplied and its business operations were financed by the receiver from receivership funds. All capital stock of the subsidiary was owned and held, in his official capacity, by the receiver, who operated the subsidiary's bus lines in competition

with appellants, by paralleling their respective routes.

On February 6, 1925, Roof and West entered into a contract in writing with the subsidiary, then entitled the Dayton and Columbus Transportation Company, by the terms of which they agreed to apply to the Public Utilities Commission of Ohio for authority to abandon service and to surrender their certificates of public convenience and necessity. After hearing before the commission, an order was entered, granting the applications and canceling the certificates. Whereupon, in compliance with their contract, appellants Roof and West immediately abandoned the public service.

Under the Roof and West contracts, the stipulated consideration moving from the subsidiary corporation was the sum of $45,000, which was paid in full to these two appellants by the receiver, from receivership funds.

On December 1, 1936, appellant Batchick entered into a contract in writing with the subsidiary corporation, and with the Springfield, London and Columbus Transit Company, binding himself to apply to the Public Utilities Commission of Ohio for authority to transfer his certificate of public convenience and necessity to the latter corporation, the entire capital stock of which would be acquired by the subsidiary, Dayton and Columbus Transportation Company; following which procedure, the transit company would apply to the utilities commission for authority to discontinue motor bus service and surrender for cancellation the transferred certificate. All procedural steps were taken in conformity with the contract to effectuate the agreed cancellation of Batchick's certificate of public convenience and necessity, and he ceased serving the public with transportation. Among other considerations received by Batchick, under the provisions of his contract, was the sum of $15,000 in cash, which was paid to him from receivership funds by the receiver of the Indiana, Columbus and Eastern Traction Company.

No formal court order authorizing the organization of the subsidiary corporation, as auxiliary to the operation of the receivership, appears in the record; but the Judge of the United States District Court for the Northern District of Ohio subsequently approved disbursements of receivership funds to the subsidiary, all the capital stock of which was owned and held by the receiver and recognized by the court as part of the assets of the receivership estate. The record contains a court order, entered in the Northern District of Ohio, approving the contract of February 6, 1925, between the subsidiary and appellants Roof and West, and authorizing the receiver to advance from his current earnings or the current earnings of the subsidiary $15,000 as an initial payment, "and to take such other steps as may be necessary to carry out the provisions of the contract."

No court order approving the fully performed contract between the subsidiary and Batchick, or approving disbursements of receivership funds on account of that contract, is found in the record. Nevertheless, it is apparent that payment of the consideration moving to Batchick was made by the receiver from receivership funds; and the operation of the receivership, considered in entirety including the subsequent sale of its assets, indicates that the court in all respects ' approved the receiver's transactions with Batchick.

Pursuant to a decree entered October 8, 1929, in the Northern District of Ohio, all the assets of the receivership estate of the Indiana, Columbus and Eastern Traction Company, including the entire capital stock of the subsidiary corporation owned and held by the receiver, and the obligations of the subsidiary to the receivership for advances for operating expenses and for payments made under the contracts between the subsidiary and the respective appellants, were sold to the Cincinnati and Lake Erie Railroad Company, an Ohio corporation. The obligations of the subsidiary were later satisfied by the issuance of preferred stock of the Cincinnati and Lake Erie Railroad Company. In the decree of sale, jurisdiction was retained by the District Court for the Northern District of Ohio of "all matters relating to * * * the enforcement on behalf of the receiver of any claims held or contracts made by him against or with other parties," and of other questions not disposed of by the decree of sale.

In January 1932, the Cincinnati and Lake Erie Railroad Company was placed in receivership in the United States District Court for the Southern District of Ohio. All the issued and outstanding capital stock, both common and preferred, of the subsidiary, Cincinnati and Lake Erie Bus Company (formerly Dayton and Columbus Transportation Company), was embraced in the order marshaling assets.

On June 1, 1939, the United States District Court for Northern Ohio entered an

order transferring the equity receivership of the Indiana, Columbus and Eastern Traction Company to the Southern District of Ohio. A plan of reorganization of the Cincinnati and Lake Erie Railroad Company, which would embrace the certificate, franchises and properties of the subsidiary corporation, Cincinnati and Lake Erie Bus Company, has been approved but not declared operative by the district court. Statement of the plan of reorganization seems immaterial to the issues here.

Since the date of acquisition by the Cincinnati and Lake Erie Railroad Company, the stock of the subsidiary has been continuously owned and possessed by the railroad company and its receivers. The subsidiary company has maintained the services of transporting passengers over its highway routes from the time of its organization in 1923 to the present time. After cancellation of their certificates, none of the three appellants engaged in the business of transporting passengers between Dayton, Springfield and Columbus, or questioned the validity of the contracts which they entered into with the subsidiary corporation until June 13, 1939, when they filed separate petitions before the Public Utilities Commission of Ohio, seeking reinstatement of their respective certificates of public convenience and necessity and requesting revocation of the like certificate of the Cincinnati and Lake Erie Bus Company. In their respective petitions, they charge that the subsidiary corporation was defectively organized and that the actions of the receiver of the Indiana, Columbus and Eastern Traction Company were illegal and unauthorized. Unfair competition with the petitioners and failure to meet the requirements for a "grandfather" certificate under Ohio law were added charges.

The receivers of the Cincinnati and Lake Erie Railroad Company filed, on June 25, 1939, in the United States District Court for the Southern District of Ohio, an action against the three appellants in the nature of a suit dependent upon and ancillary to the cause in which the Cincinnati and Lake Erie Railroad Company is being operated in receivership. The receivers prayed a final injunction against appellants from further prosecuting their complaints before the Public Utilities Commission of Ohio, from acting directly or indirectly contrary to the terms of their respective contracts entered into with the subsidiary corporation (then the Dayton and Columbus Transportation Company), and from attacking "the validity of the rights, franchises and privileges of Cincinnati and Lake Erie Bus Company to operate as a motor transportation company under the laws of the State of Ohio." It was further prayed that appellants be required to withdraw and dismiss their petitions pending before the Public Utilities Commission of Ohio; and that equitable relief be accorded as the nature of the case may require. After answers of appellants to the complaint were filed, a trial was had upon the issues during which a mass of evidence, both oral and documentary, was received in the district court. Upon conclusion of a full hearing, a final decree was entered awarding the injunctive relief prayed by the receivers. Appellants seek reversal of that final decree, and pray that the ancillary action brought by the appellee receivers in the Southern District of Ohio be dismissed.

Broadly, appellants complain that the district court for the Southern District of Ohio possessed no jurisdiction to grant the injunction; that appellees are not the real parties in interest; and that they neither pleaded nor proved a case entitling them to the injunctive relief granted.

The action was brought in the nature of a suit dependent upon and ancillary to a pending receivership cause. The injunctive relief sought and allowed was against the violation by the individual appellants of their contracts with a wholly owned corporate subsidiary of the corporation in receivership. The injunction, as prayed and allowed, also restrained appellants from attacking the validity of the rights, franchises and privileges of the subsidiary corporation to operate as a motor transportation company under the laws of Ohio. Appellants were required to dismiss their complaints pending before the State Public Utilities Commission.

It is essential to the existence of the corporation of which appellees are Federal Court receivers, and a fundamental basis of reorganization of the corporation under the plan approved, that its subsidiary continue to perform the duty of public transportation required by the certificate of public convenience and necessity issued to the subsidiary by the Public Utilities Commission of Ohio.

■ The Supreme Court has declared that, where a cloud is cast upon the franchises and property rights of a corporation in receivership, its receivers may pro-

ceed by ancillary injunction bill to protect the jurisdiction and the right of the court to administer the property. Blair v. Chicago, 201 U.S. 400, 449, 450, 26 S.Ct. 427, 50 L.Ed. 801.

■ Regardless of the citizenship of the parties or of the amount in controversy, a Federal Court receiver may bring an ancillary suit, in the court having jurisdiction of the receivership, to collect the assets of the insolvent corporation or to defend its property rights. White v. Ewing, 159 U.S. 36, 39, 15 S.Ct. 1018, 40 L.Ed. 67.

■ All rights of action of a corporation in receivership remain in the custody of the court, until administration has been completed and the receivership terminated. Neither a State court nor a Federal court may, by collateral suit, assume to deal with property rights or rights of action "constituting part of the estate within the exclusive jurisdiction and control of the courts of the other." Porter v. Sabin, 149 U.S. 473, 480, 13 S.Ct. 1008, 1011, 37 L.Ed. 815.

Mr. Justice Moody, in Wabash R. R. Co. v. Adelbert College, 208 U.S. 38, 54, 28 S.Ct. 182, 187, 52 L.Ed. 379, made this clear statement: "When a court of competent jurisdiction has, by appropriate proceedings, taken property into its possession through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. The latter courts, though of concurrent jurisdiction, are without power to render any judgment which invades or disturbs the possession of the property while it is in the custody of the court which has seized it. For the purpose of avoiding injustice which otherwise might result, a court during the continuance of its possession has, as incident thereto and as ancillary to the suit in which the possession was acquired, jurisdiction to hear and determine all questions respecting the title, the possession, or the control of the property. In the courts of the United States this incidental and ancillary jurisdiction exists, although in the subordinate suit there is no jurisdiction arising out of diversity of citizenship or the nature of the controversy."

■ Insisting that the res involved in the pending petitions of appellants before the Public Utilities Commission of Ohio (that is, the certificate of public convenience and necessity issued to the subsidiary corporation) was not as matter of fact in the custody of the appellee receivers of the corporation which owned the stock of the subsidiary, appellants contend that the mere exercise of control by one corporation over another, through stock ownership or through identity of stockholders, does not make either corporation the agent of the other, or merge them into one corporation so as to make the contract of one binding upon the other. This proposition is true, with the qualification that "the legal fiction of distinct corporate existence will be disregarded when necessary to prevent fraud, or when a corporation is so organized and controlled and its affairs so conducted 'as to make it only an adjunct or instrumentality of another corporation.'" Pittsburgh & Buffalo Co. v. Duncan, 6 Cir., 232 F. 584, 587.

■ New York Trust Co. v. Carpenter, 6 Cir., 250 F. 668, 673, cited by appellants, upheld the separate identity of a wholly owned subsidiary corporation in a factual situation clearly differentiable from that found here. The holding that the separate entity of a controlled corporation will not be recognized, if such recognition would result in injustice, is incontrovertible.

From the opinion in Chicago, Milwaukee & St. Paul Railway Company v. Minneapolis Civic & Commerce Association, 247 U.S. 490, 500, 501, 38 S.Ct. 553, 557, 62 L. Ed. 1229, it appears that, in the argument of the case, emphasis had been laid upon declarations in various opinions of the Supreme Court that mere ownership by one corporation of the capital stock of another does not create identity of corporate interests, or constitute the stockholding company owner of the property of the subsidiary, or create a relationship of principal and agent. The Supreme Court explained that such statements, while satisfactory in their context, had been repeatedly held inapplicable where the resort to stock ownership was not "for the purpose of participating in the affairs of a corporation in the normal and usual manner" but for the purpose of controlling a subsidiary company so that it might be used as a mere agency or instrumentality of the owning company. The pronouncement was made that "the courts will not permit themselves to be blinded or deceived by mere forms of law but, regardless of fictions, will deal with the substance of the transaction involved as if the corporate agency did not exist and as the justice of the case may require."

■ This court has applied the principle that the property and debts of a subsidiary

corporation are to be treated, in equity, as those of the company owning its capital stock, where the subsidiary is used as a mere instrumentality in the conduct of the parent company's business. Kimberly Coal Co. v. Douglas, 6 Cir., 45 F.2d 25.

Hooper-Mankin Co. v. Matthew Addy Co., 6 Cir., 4 F.2d 187, cited by appellants, does not gainsay this doctrine; for in that case no substantial showing was made that one corporation had been used as the mere agent or instrumentality of another, in such manner that the maintenance of the separate and distinct entities of the two corporations would result in injustice. The same observation may be applied to Richmond & I. Const. Co. v. Richmond N. I. & B. R. Co., 6 Cir., 68 F. 105, 34 L.R.A. 625, also cited by appellants.

A carefully prepared and well reasoned opinion upon the topic under discussion is Centmont Corporation v. Marsch, 1 Cir., 68 F.2d 460, 464. There, after citing and discussing many cases pertinent to the doctrine, the Court of Appeals for the First Circuit stated: "It is unnecessary to add to the authorities in support of the rule that, where a subsidiary corporation is organized for a special purpose by a corporation which holds all its capital stock, and dominates and controls its affairs in carrying out its own business purposes, the subsidiary may be held to be a mere instrumentality for that purpose, and the court will disregard the corporate form and do justice between the corporation and third parties."

District Judge Raymond, in a bankruptcy case, In re Otsego Wax Paper Co., D.C. W.D. Mich, 14 F.Supp. 15, correctly stated and applied the principle of stripping through corporate entities, where one corporation is a mere instrumentality or adjunct of another. For collation of authorities, see In re Kentucky Wagon Mfg. Co., 6 Cir., 71 F.2d 802, at page 804.

█ From the authorities which have been reviewed, the district court manifestly possessed jurisdiction in the premises. The subsidiary corporation, the Cincinnati and Lake Erie Bus Company, which formerly bore the corporate name Dayton and Columbus Transportation Company, was financed in its inception by the receiver of the Indiana, Columbus and Eastern Traction Company, in the Northern District of Ohio. With court approval, receivership funds were used not only to finance the organization of the subsidiary corporation and to supply its capital stock, but to furnish money, when needed, in the operation of its business. All of the capital stock of the subsidiary was held by the receiver in his official capacity.

Upon this record, there can be no doubt that the operation of the business of the subsidiary—obligated as it was to constant public service—constituted an important adjunct to the conduct of the receivership in the Northern District of Ohio.

The continuity of operation of the subsidiary corporation was preserved after the acquisition, by judicial sale, of the corporate assets and franchises of the Indiana, Columbus and Eastern Traction Company by the Cincinnati and Lake Erie Railroad Company, now in receivership in the Southern District of Ohio. The receivers in the Southern District of Ohio, with approval of the court, have pursued the same course, with respect to furnishing from receivership funds substantial amounts to the subsidiary for its operations, as was pursued by the receiver in the Northern District of Ohio under the predecessor stock ownership of the subsidiary.

Upon these facts, it seems logical to conclude that, from its corporate birth, the subsidiary corporation has been organized and controlled, and its affairs so conducted as to classify it, as a mere adjunct or instrumentality first of one corporation, and then of another as successor in interest and title. The successor owning-corporation, which is in receivership, has invoked the protection of a court of equity vested with jurisdiction to grant the relief prayed.

While retaining the benefits of contracts under which, for valuable considerations received, they obligated themselves to surrender and did in fact surrender certificates of public convenience and necessity, appellants, after many years of acquiescence, now seek to upset the binding effect of their agreements upon niceties of argument which, when scrutinized, bear faint resemblance to equity.

The argument is made that the appellee receivers, claiming under "derivative privity," are chargeable with all infirmities in the position of the receiver of the Indiana, Columbus and Eastern Traction Company who served as arm of the court in the Northern District of Ohio; and that the last-named receiver acted in violation of his trust and contrary to the statutes of Ohio in organizing the subsidiary, furnishing its capital stock, and advancing it money from receivership funds for the purpose of pur-

chasing competitive transportation lines, with the legal result that he could not come into equity with clean hands to enjoin appellants from violation of contracts predicated upon his own unlawful transactions. It is asserted that, if the receiver in the Northern District of Ohio who negotiated and consummated the contracts with appellants could not come into equity with clean hands, the Southern District of Ohio receivers of the successor owning-company of the subsidiary corporation are likewise barred by the principle.

The record reveals no evidence of actual or constructive fraud upon the part of the receiver in the Northern District of Ohio. His actions in the conduct of the receivership received the sanction and approval of the United States District Judge. While charging fraud against the receiver, appellants have utterly failed to prove a single circumstance which would reflect upon his integrity or his faithful performance of duty. Moreover, in organizing the subsidiary to operate as an adjunct of the corporation in receivership, he complied with the established law of Ohio.

■ In Buckeye Stages, Inc. v. Public Utilities Commission of Ohio, 134 Ohio St. 395, 17 N.E.2d 645, the Supreme Court of Ohio upheld the issuance, by the Ohio Public Utilities Commission, of a certificate of public convenience and necessity for passenger bus operation to an Ohio corporation, organized by the receiver of an insolvent electric railway company, which had furnished interurban service between Cleveland and Toledo. The argument was rejected that the court of receivership possessed no authority to cause the new corporation to be organized. This binding authority impels decision in a United States Court that the receiver was lawfully authorized to organize the subsidiary corporation with which we are here concerned.

Columbus & Zanesville Transportation Co. v. Public Utilities Commission of Ohio, 118 Ohio St. 43, 160 N.E. 458, brought to our attention by appellants, is not remotely in point. In that case, certain individuals, applying for the issuance of a certificate of public convenience and necessity to a motor transportation company organized by them, had misrepresented facts concerning the status of the corporation with respect to its capital stock, stockholders, board of directors, and officers. The Supreme Court of Ohio held that the public utilities commission was justified in refusing to issue a certificate to the transportation company, or in cancelling the certificate, if already issued. In the case at bar, there is no substantial evidence from which a reasonable inference could be drawn that the certificate of public convenience and necessity issued to the subsidiary corporation was fraudulently procured.

■ Even could it be presumed that the appellants, after retaining for some sixteen years thousands of dollars of receivership funds paid into their pockets, are not barred by laches from challenging the binding effect of an order entered more than a decade ago in the United States District Court for the Northern District of Ohio approving their contracts with the subsidiary corporation pursuant to which they received substantial benefits, they are estopped from attacking the legality of the corporate existence and authority of the subsidiary, whose organization and conduct, including execution of the contract brought in question, received sanction of a court of the United States of competent jurisdiction.

In Knapp v. S. Jarvis Adams Co., 6 Cir., 135 F. 1008, it was held that a party who retained the benefits of a contract with a corporation could not, upon the ground of fraud or illegality in its organization, successfully defend a suit brought by the corporation for enforcement of the contract. Compare Kardo Co. v. Adams, 6 Cir., 231 F. 950, 968. See, also, Peckham Iron Co. v. Harper, 41 Ohio St. 100, 106. The Supreme Court of Ohio, in Newburg Petroleum Co. v. Weare, 27 Ohio St. 343, which was an action brought on a contract, held that defendants, after dealing with the plaintiff corporation, recognizing its validity, and receiving benefits under the contract in suit, were estopped from denying the power of the corporation to make the contract. These decisions present ample precedent for barring appellants from an attack upon the legality of the organization and existence of the subsidiary corporation, with which they lawfully contracted.

The further contention is made by appellants that the appellee receivers have an adequate remedy at law of such character as to repel the appropriate allowance of the injunctive relief granted by the decree of the district court. Atlas Life Insurance v. Southern, Inc., 306 U.S. 563, 570, 59 S.Ct. 657, 661, 83 L.Ed. 987, is pressed as authority. But, in that case, the present Chief Justice, finding the issue to be "not one of jurisdiction but of the need and

propriety of equitable relief," simply stated that the "absence of legal remedy does not dispense with the necessity of alleging and proving a cause of action in equity as a prerequisite to equitable relief in a federal court." Clearly, in the case at bar, the appellees have alleged and proved a cause of action in equity.

Another decision emphasized by appellants is Natural Gas Pipeline Co. v. Slattery, 302 U.S. 300, 310, 311, 58 S.Ct. 199, 204, 82 L.Ed. 276, where the highest court said: "The rule that a suitor must exhaust his administrative remedies before seeking the extraordinary relief of a court of equity [listing previous decisions] is of special force when resort is had to the federal courts to restrain the action of state officers, [again citing earlier decisions]. * * * Here the commission had authority to pass upon every question raised by the appellant and was able to modify the order. In such circumstances, the trial court is free to withhold its aid entirely until administrative remedies have been exhausted." In the present litigation, the injunction is not directed against state officers, but against individual defendants. Moreover, the Public Utilities Commission of Ohio obviously possesses no authority to pass upon all questions which have been raised. No semblance of power is vested in the commission to adjudicate a private controversy between individuals arising out of breach of contract.

Peck v. Jenness, 7 How. 612, 48 U.S. 612, 12 L.Ed. 841, cited by appellants, recognizes the principle that a United States district court cannot oust a state court of lawful jurisdiction, which has already attached; and Pacific Live Stock Co. v. Lewis, D.C., 217 F. 95, 97, also cited by them, asserts that there can be no doubt of the authority of a court of the United States to grant an injunction to stay proceedings in a state court to protect its own prior jurisdiction.

Other authorities adduced by appellants lend no greater support to their argument than do those which have been mentioned.

■ It is well understood that a United States court of equity will not entertain a suit for injunctive relief, unless it be shown that the suitor has no plain, adequate and complete remedy at law. In invariably applying this truism, the Federal courts not only follow a long established principle of equity, but bow to the plain inhibition of the declaratory statute. Judicial Code, Sec. 267, U.S.C.A. Title 28, Sec. 384. The converse is likewise true. Where there is no plain, adequate and complete remedy at law, a Federal court will award injunctive relief in appropriate setting.

Ex parte Baldwin, 291 U.S. 610, 615, 54 S.Ct. 551, 553, 78 L.Ed. 1020, declares that the power of courts, both state and Federal, to prevent by injunction any interference with their jurisdiction, "is an application of the general principle that, where a court of competent jurisdiction has, through its officers, taken property into its possession, the property is thereby withdrawn from the jurisdiction of other courts." The further statement is made that "having possession, the court may not only issue all writs necessary to protect its possession from physical interference, but is entitled to determine all questions respecting the same."

In a case where "the property concerned is already in the possession of the court, and the act complained of is a disturbance of that possession, it is not unusual to allow the receiver to proceed by petition [for an injunction], giving the defendant the opportunity of making defense by answer or other pleading, according to the common course of equity practice." Lake Shore & M. S. Ry. Co. v. Felton, 6 Cir., 103 F. 227, 229.

In Davis v. Wakelee, 156 U.S. 680, 688, 15 S.Ct. 555, 558, 39 L.Ed. 578, the Supreme Court said: "It is a settled principle of equity jurisprudence that, if the remedy at law be doubtful, a court of equity will not decline cognizance of the suit. * * * Where equity can give relief, plaintiff ought not to be compelled to speculate upon the chance of his obtaining relief at law." After quoting the last sentence, Mr. Justice Cardozo, in American Life Insurance Co. v. Stewart, 300 U.S. 203, 214, 215, 57 S.Ct. 377, 380, 81 L.Ed. 605, 111 A.L.R. 1268, appended the comment that "a remedy at law does not exclude one in equity unless it is equally prompt and certain and in other ways efficient." Mr. Justice Brandeis, in Dawson v. Kentucky Distilleries Co., 255 U.S. 288, 296, 41 S.Ct. 272, 65 L.Ed. 638, quoted with approval from the first sentence of Davis v. Wakelee which we have quoted above; and the authority was also cited approvingly in Grosjean v. American Press Co., 297 U.S. 233, 242, 56 S.Ct. 444, 80 L.Ed. 660, where it was held that equitable jurisdiction exists to enjoin collection of a state tax challenged as unconstitutional, upon a showing that if the taxpayer should pay

the tax he would be afforded no clear remedy of restitution.

This court pointed out in Davis v. A. Booth & Co., 6 Cir., 131 F. 31, 36, that the difficulty in estimating damages in an action at law and the likelihood of multiplicity of suits furnish ample reasons for the exercise by a court of equity of its injunctive power to restrain wrongdoing.

On the facts confronted here, the appellee receivers have no recourse open to a plain, adequate and complete remedy at law. The Public Utilities Commission of Ohio is an administrative board, not a judicial tribunal, and is vested with no jurisdiction to decide the issues presented to this court. The duties of the commission begin and end with conservation of the public interest; no showing has been made that the public interest is involved in this litigation. Individual rights of private litigants are the subject matter of the controversy. The injunctive relief granted in the district court is the only route by which irreparable damage to the receivership, from the fraudulent conduct of appellants, may be avoided.

The strained argument that the appellees are not real parties in interest seems to call for little comment. Lynch v. Roberson, 6 Cir., 287 F. 433, is so different in its circumstances as to have no applicability. As we see it, by purchasing at judicial sale the assets of the corporation in receivership in the Northern District of Ohio, including all of the capital stock and assets of the subsidiary with which appellants contracted, the Cincinnati and Lake Erie Railroad Company became vested with the right to enforce the contracts of the subsidiary company, which it purchased and operated as a mere adjunct and instrumentality to the conduct of its business. This right does not rest upon the extremely doubtful power of the district court for the Northern District of Ohio to transfer the receivership cause pending there to the Southern District of Ohio, but accrues directly from the purchase by the Cincinnati and Lake Erie Railroad Company of the assets of the insolvent corporation in receivership custody in the Northern District. The appellees, as receivers, are clothed with the right and charged with the duty of protecting the property and interests of the Cincinnati and Lake Erie Railroad Company, now in receivership in the Southern District of Ohio. The action in bringing this ancillary suit, which has been found to be lawful, was properly stamped with approval by the judge in the last-named district.

Appellants' other contentions, of minor importance, do not merit comment.

The decree of the district court is affirmed.