UNITED STATES ET AL. *v.* MARSHALL TRANSPORT
CO. ET AL.

No. 589.   Argued March 28, 1944.—Decided May 1, 1944.

*Mr. Daniel H. Kunkel,* with whom *Solicitor General Fahy, Assistant Attorney General Berge,* and *Messrs. Robert L. Pierce, Walter J. Cummings, Jr.,* and *Daniel W. Knowlton* were on the brief, for the United States et al.; and *Mr. Charles E. Cotterill,* with whom *Mr. Harold G. Hernly* was on the brief, for the Coastal Tank Lines, Inc. et al.,—appellants.

*Mr. Robert C. Winter,* with whom *Messrs. George H. Klein, Bigham D. Eblen,* and *Harry S. Elkins* were on the brief (*Mr. Robert W. Williams* entered an appearance), for appellees.

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

On an application to the Interstate Commerce Commission of two carriers by motor vehicle, appellee Refiners Transport Terminal Corporation and appellee Marshall Transport Company, for permission for Refiners to purchase the property and operating rights of Marshall, the Commission found that Refiners, the vendee-carrier, was controlled through stock ownership by a non-carrier, Union Tank Car Company, and that the proposed purchase would result in the acquisition by Union of control of the property and business of Marshall. Construing §§ 5 (2) (a) and (b) of Part I of the Interstate Commerce Act, 24 Stat. 379, as amended by the Transportation Act of 1940, 54 Stat. 905, 49 U. S. C. §§ 5 (2) (a) and (b), as requiring the application to be made by Union, the non-carrier corporation controlling Refiners, the Commission denied the application of the carriers for lack of power in the Commission to approve the purchase.

The questions for our decision are (1) whether the acquisition of the property and franchises of one carrier by another, which is controlled by a non-carrier, involves the acquisition of control of the first or vendor-carrier by the non-carrier for which the Commission's approval is required by § 5 (2) (a) of the Interstate Commerce Act; and if so (2) whether the Commission rightly held that under § 5 (2) (b) of the Act it could not consider the propriety of the transaction in the absence of an application by the non-carrier for the Commission's authority to acquire control.

Appellee Refiners holds certificates of public convenience and necessity from the Interstate Commerce Commission to operate as a common carrier, by motor vehicle, of gasoline and petroleum products in Pennsylvania and eight of the central states. Refiners, as the Commission

found, is controlled through ownership of 82.6% of its outstanding common stock by Union Tank Car Company, a non-carrier corporation. Marshall, a corporation, holds a certificate of public convenience and necessity under the grandfather clause, § 206 of the Interstate Commerce Act, 49 U. S. C. § 306, authorizing carriage, as a common carrier, of petroleum products, in bulk in tank trucks, over irregular routes in Maryland, Delaware, Pennsylvania, Virginia, and Washington, D. C. By their joint application Refiners and Marshall sought authority of the Commission under § 5 (2) (a) for Refiners to acquire by purchase the operating property and rights of Marshall.

After a hearing on the application, in which nine motor carriers, co-appellants here, appeared as protestants, and the Antitrust Division of the Department of Justice intervened, Division 4 of the Commission issued its report finding that the proposed purchase was within the scope of § 5 (2) (a) and (b) and would be consistent with the public interest. It overruled contentions of the protestants that the proposed purchase would result in the acquisition of control of Marshall by Union, the non-carrier, through its control of Refiners, the purchaser, so as to require that Union join in the application. 39 M. C. C. 93. On petition for rehearing the Commission reversed the holding of Division 4. It concluded that as Union, the non-carrier, already controlled one carrier, Refiners, the purchase of the property and business of Marshall by Refiners would result in their control by Union, and that under §§ 5 (2) (a) and (b) and related sections this could not be done without an application by Union for the Commission's authority to do so. 39 M. C. C. 271.

Union having failed to apply for that authority within the twenty days allowed for that purpose by the Commission's order, the Commission dismissed the pending application of Refiners and Marshall. Upon the suit of appel-

**34**

lees the District Court for Maryland, three judges sitting, set aside the Commission's order, Circuit Judge Soper dissenting, 52 F. Supp. 1010, and the case comes here on appeal under 28 U. S. C. §§ 47 (a), 345.

Section 5 (2) (a) of the Act, makes it "lawful, with the approval and authorization of the Commission . . . for two or more carriers to consolidate or merge their properties or franchises . . . into one corporation for the ownership, management, and operation of the properties theretofore in separate ownership; or for any carrier . . . to purchase . . . the properties . . . of another; . . . or for a person which is not a carrier and which has control of one or more carriers to acquire control of another carrier through ownership of its stock or otherwise."

Section 5 (2) (b) provides that "Whenever a transaction is proposed under subparagraph (a), the carrier or carriers or person seeking authority therefor shall present an application to the Commission. . . ." And § 5 (3) provides that "Whenever a person which is not a carrier is authorized, by an order entered under paragraph (2), to acquire control of any carrier or of two or more carriers, such person thereafter shall, to the extent provided by the Commission in such order, be considered as a carrier subject to" specified provisions of the Act, relating mainly to the keeping of accounts, the making of reports, access to records, the issuance of securities and the assumption of liabilities.

Section 5 (4) makes it "unlawful for any person, except as provided in paragraph (2), to enter into any transaction within the scope of subparagraph (a) thereof, or to accomplish or effectuate, or to participate in accomplishing or effectuating, the control or management in a common interest of any two or more carriers, however such result is attained, whether directly or indirectly, by use of . . . a holding or investment company or companies, a voting trust or trusts, or in any other manner whatsoever. . . . As used in this paragraph and paragraph (5), the words

'control or management' shall be construed to include the power to exercise control or management."

In determining whether, under the non-carrier control clause of § 5 (2) (a), Union, the non-carrier here, is required to file an application with the Commission, the issue turns on the questions whether, within the meaning of the statute, Union is by the proposed transaction attempting to "acquire control" of Marshall and, if so, whether Union is within the requirement of § 5 (2) (b) that the person seeking the authority of the Commission to acquire such control shall present his application to the Commission. In answering these questions the District Court thought that the several instances specified by § 5 (2) (a), in which the Commission is authorized to permit acquisition of carrier control, are separate and independent of each other so that, the Commission having full authority to authorize Refiners to purchase Marshall under the merger and purchase provisions of § 5 (2) (a), its authority in that respect is not limited or superseded by the non-carrier control provision appearing later in the subparagraph and that provision is therefore inapplicable.

In any case, the District Court concluded that these provisions are permissive only, giving the Commission authority to act with respect to any one without regard to the restriction imposed by any other. Since Refiners' and Marshall's application to the Commission for approval of Refiners' purchase of Marshall's property and operating rights are within the permissive authority of the Commission under the purchase provision of § 5 (2) (a), the Court thought that it was not necessary for Union to comply with the non-carrier provision and with the requirement of § 5 (2) (b) by joining in the application even though the non-carrier provision would otherwise be applicable to the transaction.

But this overlooks the fact, which the Commission thought controlling, that the present transaction may fall

within both the purchase provision and the non-carrier control provision of the statute since it involves not only the purchase of Marshall by Refiners but also the acquisition of control of Marshall by Union, through its control of Refiners. The question then is not whether the non-carrier control provision limits or supersedes the purchase provision but whether, as the Commission thought, both apply, and if so the extent to which they restrict the Commission's authority to approve the acquisition of control by a non-carrier which has not filed an application pursuant to § 5 (2) (b).

As a matter of statutory construction it does not follow that such parts of the proposed transaction in this case as are subject to the requirement of the non-carrier control provision can escape that requirement because the transaction also involves a purchase which falls within and satisfies the requirement of the purchase provision of the statute. Section 5 (4) prohibits each of the transactions enumerated in § 5 (2) (a) unless approved by the Commission. And it is plain that if the proposed transaction involves Union's non-carrier control of Marshall within the meaning of § 5 (2) (a) appropriate application to the Commission for its approval must be made in conformity to § 5 (2) (b). Hence our inquiry must be directed to the nature of the requirement of the non-carrier control provision of the statute and to the question whether if applicable it is satisfied by appellees' application to the Commission in which Union did not join.

It is not doubted that if Union, having control of Refiners, sought to acquire stock control of Marshall, Union would be required by § 5 (2) (b) to apply for the Commission's authority to do so. But it is said that having control of Refiners, Union may, by procuring Refiners' compliance with the purchase provisions of the statute alone, extend its control indefinitely to other carriers merely by directing the purchase of their property and

business by Refiners, without subjecting itself to the jurisdiction of the Commission as provided in § 5 (3), so long as Union does not act directly as the purchaser of the property [1] or of a controlling stock interest in such other carriers.

We think that neither the language nor the legislative history of the statute admits of so narrow a construction. Section § 5 (4) makes it unlawful, without the approval of the Commission as provided by § 5 (2) (a), for a person which is not a carrier and which has control of one or more carriers to acquire control of another carrier through ownership of its stock or otherwise. Not only is this language broad enough in terms to embrace the acquisition of control by a non-carrier through the purchase, by a controlled carrier, of the property and business of another carrier, but the legislative history indicates that such was its purpose.

Congress, by § 407 of the Transportation Act of 1920, 41 Stat. 480, amended the Interstate Commerce Act so as to provide in § 5 (2) that the Commission should have authority to permit a rail carrier or carriers to acquire control of another by lease or purchase of stock; by § 5 (8) the carriers affected were relieved from the operation of the antitrust laws, and by § 5 (6) the Commission was authorized upon special conditions to approve the actual consolidation of rail carriers. By the 1933 amendment of § 5 (2), 48 Stat. 217, the Commission was given further authority to permit unified control of two separate carriers "through ownership of their stock" and in 1940, § 5 (2) (a) was amended to read as at present by the addition

---

[1] Such an acquisition of operating property, whether or not within § 5 (2) (a), would render the acquiring corporation an operating carrier within §§ 203 (a) (14)–(16) subject as such to the jurisdiction of the Commission under Part II. Similarly the transfer of the carrier's operating franchises would be subject to the Commission's jurisdiction under § 212 (b).

of the words "or otherwise" to the phrase last quoted, and the section was made applicable to motor carriers, 54 Stat. 905. Section 1 (3) (b) of the Act as amended in 1940 declares that "control" "shall be construed to include actual as well as legal control, whether maintained or exercised through or by reason of the method of or circumstances surrounding organization or operation, through or by common directors, officers, or stockholders, a voting trust or trusts, a holding or investment company or companies, or through or by any other direct or indirect means; and to include the power to exercise control."

The Conference Committee Report on the Transportation Act of 1940, H. R. Rep. No. 2832, 76th Cong., 3d Sess., p. 63, points out that this definition of "control" was added in order to make applicable to specified sections of the Act, including § 5, the benefit of the interpretation of this Court in *Rochester Telephone Co.* v. *United States,* 307 U. S. 125, 145–6, of the similar definition of "control" in § 2 of the Communications Act of 1934, 48 Stat. 1065, 47 U. S. C. § 152 (b). In that case this Court had emphasized the breadth of the statutory language as embracing every type of control in fact. It had declared that the existence of control must be determined by a regard for the "actualities" of intercorporate relationships and that the Commission's determinations of fact, if warranted by the record, were conclusive.

Here the statute has declared that the non-carrier control to be approved by the Commission is control through stock ownership "or otherwise." § 5 (2) (a). It has in the broadest terms prohibited the effectuating of "control or management . . ., however such result is attained, whether directly or indirectly, by use of common directors, officers, or stockholders, a holding or investment company . . ., or in any other manner whatsoever." § 5 (4). "Control or management" is defined to include "the power to exercise control or management." § 5 (4). The con-

trol or management whose acquisition is prohibited unless the approval of the Commission is secured is that which is obtained "in any . . . manner whatsoever" "however such result is attained, whether directly or indirectly," § 5 (4). It includes "actual as well as legal control," § 1 (3) (b), and "the power to exercise control or management," § 5 (4).

Appellees argue that the Commission, in finding that the proposed purchase of the property and franchises of Marshall would be an acquisition of "control" requiring the Commission's approval under §§ 5 (2) (a) and 5 (4), disregarded the words of the statute which speaks only of acquisition of control of another "carrier," defined in § 1 (3) (a) as a person, "natural or artificial," and not of acquisition of control of its property. But such a literal interpretation of the statute ignores its essential object. What § 5 (4) read with § 5 (2) (a) prohibits, unless authorized by the Commission, is the merger by two or more carriers of "their properties or franchises . . . into one corporation for the ownership, management, and operation of the properties theretofore in separate ownership," and the acquisition by a non-carrier, having control of one carrier, of control of another, or the effectuating in any other manner of "the control or management in a common interest of any two or more carriers."

The statute is thus concerned, not merely with the acquisition of control of one corporation by another, but with the acquisition of control of a corporation which is doing the business of a carrier, because such control is in effect control of its carrier business. Control of that business, which may be effected by stock ownership, may also be "otherwise" effected through a contract of a controlled carrier to purchase the business of the other carrier, if the purchase receives the approval of the Commission. The power thus acquired over the vendor-carrier by the contract of purchase is the power "to exercise control or

management" over its carrier business which, under § 5 (4), can become effective only with the approval of the Commission. As the Commission pointed out in its report, there can be no more direct or positive manner of obtaining control than by outright purchase of another carrier's business and property and the purpose of the Act would be defeated if outright purchase, through the medium of a controlled subsidiary carrier, of another carrier's property and operating rights, were exempted, while control by purchase of stock of the other carrier through the same subsidiary remained within the Act.

The Commission also emphasized the fact that, as the motor carrier business is now organized, purchase of the assets and franchises of carriers would be the usual and in many cases the only feasible method of acquiring control of them. It pointed out that many of the businesses are owned by individuals or partnerships, often possessing extensive operating rights. In the case of corporations their stock is usually closely held and they are without outstanding long-term debt obligations. In all these cases a simple and usual method of acquiring control of other carriers is by the cash purchase of their assets and operating rights and the assumption of their liabilities followed by liquidation of the vendor. The Commission concluded, "Proceeding thus through a controlled subsidiary, a non-carrier holding company, or others, may expand at will without becoming subject to our jurisdiction under the construction adopted by the division. We cannot agree to that construction of 'control' as used in the act." 39 M. C. C. at 275. For the reasons which we have stated we think the Commission's construction of the Act in this respect is correct.

The question remains whether the Commission had authority to proceed in the absence of any application by Union. By § 5 (4) any transaction within the scope of

subparagraph (a) of paragraph (2) is unlawful except as provided by that paragraph, which includes subparagraph (b). Section 5 (2) (a), read with § 5 (4), requires the acquisition of control to be with the approval of the Commission. And § 5 (2) (b) requires the "person" seeking authority for a transaction covered by subparagraph (a), here the non-carrier control of Marshall, to present an application to the Commission. The Commission may approve the application "subject to such terms and conditions and such modifications as it shall find to be just and reasonable." The purpose of these provisions of §§ 5 (2) (b) and 5 (4) is apparent when they are read with § 5 (3), which authorizes the Commission, by its order permitting non-carrier control, to require such non-carrier to be considered a carrier subject to the Act to the extent provided in the order made in conformity to § 5 (3).

The control over the non-carrier contemplated by § 5 (3) can be acquired only if the non-carrier subjects itself to the jurisdiction of the Commission by filing its application with the Commission for its approval of such non-carrier control as is provided by § 5 (2) (b). The purpose of § 5 (3) to subject the non-carrier, thus acquiring control, to specified provisions of the Act would be defeated if the non-carrier were not to become subject to the Commission's order. That is avoided by making it unlawful to acquire non-carrier control save on the non-carrier's application to the Commission in conformity to § 5 (2) (b). As appellees' application to the Commission involved the acquisition of non-carrier control of Marshall by Union, Union was a person seeking authority for such control and as such was required by § 5 (2) (b) to make application to the Commission. To approve the transaction involving such non-carrier control without the application of the non-carrier would be to authorize

Union's non-carrier control of Marshall without subjecting the former to the Commission's jurisdiction as required by § 5 (3).

The Commission rightly concluded that it was without authority to approve such control unless Union, the non-carrier, filed its application with the Commission, and since Union failed to do so within the time allowed by the Commission's order, the Commission properly dismissed the pending application in which Union had failed to join. It was therefore error for the District Court to set aside the Commission's order and the judgment of the District Court is

*Reversed.*

MR. JUSTICE ROBERTS is of the opinion that the judgment should be affirmed for the reasons given by the District Court.