Peter VERBEEM, doing business as Peters Cartage, Plaintiff,

v.

UNITED STATES of America, Interstate Commerce Commission, William Amlin and Darrell Amlin, d/b/a Amlin Cartage, et al., Defendants.

Donald GOUIN, doing business as Don's Transports & Cartage, Plaintiff,

v.

UNITED STATES of America, Interstate Commerce Commission, William Amlin and Darrell Amlin, d/b/a Amlin Cartage, et al., Defendants.

Civ. A. Nos. 16180, 16181.

United States District Court
E. D. Michigan, S. D.

Aug. 2, 1957.

Wilhelmina Boersma, Arthur P. Boynton, Wilber M. Brucker, Jr., Detroit, Mich., Clark, Klein, Brucker & Waples, Detroit, Mich., of counsel, for plaintiffs.

James E. Kilday, John H. Earle, Attys., Dept. of Justice, Washington, D. C., Victor R. Hansen, Asst. Atty. Gen., Fred W. Kaess, U. S. Atty., Orrin C. Jones, Asst. U. S. Atty., Detroit, Mich., for defendant, United States.

James Y. Piper, Asst. Gen. Counsel, Robert W. Ginnane, Gen. Counsel, Washington, D. C., for intervening defendant, Interstate Commerce Commission.

Rex Eames, Sullivan, Elmer, Eames & Moody, Detroit, Mich., for intervening defendants motor carriers.

Before SIMONS, Circuit Judge, and LEVIN and FREEMAN, District Judges.

LEVIN, District Judge.

This is a consolidated action brought by two motor carriers against the United States of America, pursuant to 28 U.S. C.A. §§ 1336, 2321 et seq. (1950), and 49 U.S.C.A. § 17(9) (1951) to void certain orders of the Interstate Commerce Commission and to restrain the Commission from interfering with the plaintiffs' business operations. The Interstate Commerce Commission and certain interested motor carriers were permitted to intervene as defendants, pursuant to 28 U.S.C.A. § 2323 (1950). Since the two cases involve substantially similar facts they were consolidated and may be disposed of together.

The plaintiffs have operated as common carriers of property by motor vehicle between Detroit, Michigan, and Windsor, Ontario, since at least 1946. They have not received authorization from the Interstate Commerce Commission to conduct their operations.

In 1953 the Commission notified the plaintiffs that their Windsor-Detroit operations could not continue without authorization from the Commission. The plaintiffs formally applied for certificates of public convenience and necessity for their cartage operations in 1954. After hearings the Commission denied the applications. It is these orders which the plaintiffs seek to annul, taking the position that no certificates are necessary, and that their applications ought not to have been made for the reason that the statute expressly exempts them from the requirement of obtaining certificates of public convenience and necessity.

At the outset it should be made clear that there is no evidence that the Commission acted arbitrarily or capriciously. The only substantial questions before this court are whether the claimed exemptions from the jurisdiction of the Interstate Commerce Commission, under Sections 202(c) (2) and 203(b) (8) of the 1935 additions to the Interstate Commerce Act, are available to the plaintiffs. The exemptions are only partial in any event since the Commission, as is not denied by the plaintiffs, retains certain

jurisdiction as to qualifications, hours of service of employees, safety and standards of equipment.

As to the exemption provided by Section 202(c) (2), 49 U.S.C.A. § 302(c) (2) (1951), set out in the margin,[1] the answer is a short one. The plaintiffs do not qualify for the exemption because they are not engaged in transportation for any common carrier by railroad, express company, motor carrier, water carrier or freight forwarder subject to other chapters of the Interstate Commerce Act.

The plaintiffs claim for exemption under Sec. 203(b) (8), 49 U.S.C.A. § 303 (b) (8), (1951) presents a different problem. The relevant portion of the section provides as follows:

"[N]or, unless and to the extent that the Commission shall from time to time find that such application is necessary to carry out the national transportation policy declared in the Interstate Commerce Act, shall the provisions of this chapter, except the provisions of section 304 of this title relative to qualifications and maximum hours of service of employees and safety of operation or standards of equipment apply to: (8) The transportation of passengers or property in interstate or foreign commerce wholly within a municipality or between contiguous municipalities or within a zone adjacent to and commercially a part of any such municipality or municipalities * * *."

The exemption at issue here is that covering the transportation of property "between contiguous municipalities." It should be noted that there is no significant legislative history of the Motor Carrier Act of 1935 concerning this exemption. See 74th Cong., Sess. I (1935), H.Rept.No. 1645; Sen.Rept.No. 482 and 79th Cong. Rec. Part 5, pp. 5650–5651; 74th Cong., Sess. I (1935).

That Windsor and Detroit are separate municipalities is not questioned but whether they are contiguous within the meaning of the exemption must now be decided. The two municipalities are directly opposite each other, separated by a river approximately one-half mile wide, and connected by a bridge, a vehicular and passenger tunnel and a railway tunnel. The defendants concede that the plaintiffs' cartage between Windsor and Detroit is in foreign commerce. The plaintiffs' operations therefore fit within the clear language of the second exemption, namely, that the plaintiffs are engaged in the transportation of property in foreign commerce between contiguous municipalities.

The defendants urge, however, that in spite of the clear language of this exemption it should be construed to read: "between contiguous municipalities wholly within the United States." The defendants have made no showing that Congress did not intend to give the language used its ordinary and clear meaning. Indeed, even the Commission reads this section to exempt operations which cross state boundaries. See, Chicago, Ill. Commercial Zone, 1 M.C.C. 673 (1937); St. Louis, Mo.—East St. Louis, Ill. Commercial Zone, 1 M.C.C. 656 (1937); Kansas City, Mo.—Kansas City,

---

1. " * * * the provisions of this chapter * * * shall not apply * * * (2) to transportation by motor vehicle by any person (whether as agent or under a contractual arrangement) for a common carrier by railroad subject to chapter 1 of this title, an express company subject to chapter 1 of this title, a motor carrier subject to this chapter, a water-carrier subject to chapter 12 of this title, or a freight forwarder subject to chapter 13 of this title, in the performance within terminal areas of transfer, collection, or delivery service; but such transportation shall be considered to be performed by such carrier, express company, or freight forwarder as part of, and shall be regulated in the same manner as, the transportation by railroad, express, motor vehicle, or water, or the freight forwarder transportation or service, to which such services are incidental." 49 U.S.C.A. § 302(c) (2), (1951).

Kansas, Commercial Zone, 31 M.C.C. 5 (1941).

■ The meaning of a statute, clear and unambiguous on its face, may not be varied by administrative decisions. Mid-Continent Petroleum Corp. v. N. L. R. B., 6 Cir., 1953, 204 F.2d 613, certiorari denied, 1953, 346 U.S. 856, 74 S.Ct. 71, 98 L.Ed. 369; I. C. C. v. Dunn, 5 Cir., 1948, 166 F.2d 116.

It may be noted that interpretations of this section by the Commission were in conflict during the crucial years when the Motor Carrier Act was first being implemented. In Ed Goyean Carrier Application, 8 M.C.C. 359 (1938); 11 M.C.C. 519 (1938) and in Eugene Ethier Contract Carrier Application, 14 M.C.C. 785 (1939) the Commission held that Windsor and Detroit were contiguous and that operations between these cities were therefore within the exemption of Section 203(b) (8). In 1940, however, the Commission apparently reversed its earlier position because it granted a certificate of public convenience and necessity to a carrier for Detroit-Windsor cartage. Certificate of Direct-Winters Transport, Ltd., No. MC 37918 SUB 1, Oct. 16, 1940. Then, in 1945, in Resler, Extension of Operations—Juarez, Mexico, 44 M.C.C. 733, the Commission formally ruled that Section 203(b) (8) did not apply to a foreign municipality which was contiguous to a city in the United States (El Paso, Texas). In Ex Parte No. M.C. 37 Commercial Zones and Terminal Areas, 46 M.C.C. 665, 686 (1946) the Commission overruled its rulings in the Goyean and Ethier cases, holding that the exemption provided for in Section 203(b) (8) did not apply to Detroit-Windsor carrier operations.

■ Said the Supreme Court in United States v. Missouri Pac. R. Co., 1932, 278 U.S. 269, 280, 49 S.Ct. 133, 137, 73 L.Ed. 322, commenting on administrative constructions of statutes:

"* * * And if such interpretation has not been uniform, it is not entitled to such respect or

weight, but will be taken into account only to the extent that it is supported by valid reasons." See, also N. L. R. B. v. Globe Automatic Sprinkler Co., 3 Cir., 1952, 199 F.2d 64.

It seems clear, therefore, that this court ought not to attach such weight to the present interpretation by the Commission as to override its own judgment of the force of the statute.

■ We are also convinced that a literal interpretation of the section best complies with the intent and the policy of the statute. The exemption in question is clearly directed to relieving the Commission of the burdensome and highly expensive task of regulating purely local cartage operations. It is common knowledge that the United States borders at Mexico and Canada are dotted with "twin-cities," one of which is on each side of the border. No reason appears why the regulation of purely local cartage between such cities would be any less burdensome to the Commission, or more important to the economy of this country, than the regulation of cartage between Kansas City, Kansas and Kansas City, Missouri, or between New York City and Newark, New Jersey.

Indeed, in 1955 the Commission itself recognized that such border city operations were not important enough to be regulated by the Commission. In its Report to Congress for that year the Commission, acting under the assumption that Section 203(b) (8) did not exempt border city cartage operations, made this recommendation:

"The present exemptions for local drayage do not apply to transportation from a city on the border of the United States to points in Canada or Mexico. Inasmuch as the Commission has found that no part of a foreign country is a part of a commercial zone which is exempt under section 203(b) (8) of the act, it is necessary for all motor carriers performing local drayage between Detroit, Mich., and Wind-

sor, Canada, or between El Paso, Tex., and Juarez, Mexico, and between other border points to obtain operating authority from the Commission. As a matter of practice, however, most of such local drayages have not obtained certificates, and the operations, particularly along the Mexican border, are being conducted in violation of the law. *This transportation does not seem to be of sufficient importance to the economy of the United States to justify the present requirement.*" (Emphasis added.) The 69th Annual Report to Congress by the Interstate Commerce Commission, p. 128 (1955).

Although this recommedation was not renewed in the 1957 report, the Commission does not claim that the economic importance of these operations has changed since 1955.

■ Nor are we persuaded that the exemption of border city cartage would create special problems of enforcement for the Commission. The defendant asserts that the Commission would be unable to discover whether the plaintiffs would operate in Canada beyond Windsor and therefore be outside the exemption for contiguous municipalities. Assuming that the plaintiffs do extend their operations into Canada beyond Windsor, we fail to see how this should affect their exemption for operations between Detroit and Windsor. That the Commission is not concerned with purely Canadian operations is clearly demonstrated by the wording of the certificates given in the past to other Detroit-Windsor carriers. See, for example, the certificate of Charles Hinton and Company, Ltd., No. MC 864 23 (1949) "Between Detroit, Mich. and points and places within 8 miles of Detroit, on the one hand, and, on the other, the boundary of the United States and Canada at Detroit," and the Certificate of Direct-

Winters Transport, Ltd., No. MC 37918 SUB 1 (1940).

It also seems clear that as late as 1955 the Commission saw no great problems of enforcement or it would not have urged in its report that its jurisdiction over these operations be terminated. Here, also, the Commission does not claim that any new problems of enforcement have arisen since 1955.

Moreover, as a practical matter, if deemed necessary or important, the Commission can easily discover whether the plaintiffs have extended their operations. It can consult the records of the plaintiffs with respect to the shippers and consignees, and the consular invoices covering these shipments.

■■ There is no merit in the claim of the Commission that the instant proceeding is a collateral attack on Ex Parte No. MC–37 Commercial Zones and Terminal Areas, 46 M.C.C. 665 (1946). This is an attack on the hearings to which these plaintiffs were parties. Donald Gouin, Common Carrier Application, No. MC–114807; Peter Verbeem, Common Carrier Application, No. MC 114663. The plaintiffs allege here that the Commission lacked jurisdiction over the subject matter involved in these hearings. A judgment rendered without jurisdiction over the subject matter in question is void and a void judgment may be attacked directly or collaterally at any time. See, e. g., Williams v. State of North Carolina, 1945, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577; Rose v. Himely, 1808, 4 Cranch 241, 8 U.S. 241, 2 L.Ed. 608; 7 Moore's Federal Practice Par. 60.41(1) (2d. ed., 1954).

The statute exempts the plaintiffs in the operations here described from the requirement that they obtain certificates of public convenience and necessity. An appropriate form of order may be presented for signature.

SIMONS, Circuit Judge, and FREEMAN, District Judge, concur.