**HOMER WHITE, INC., Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

and

**Consolidated Truck Lines, Limited, Direct Transport Limited, and Intercity Truck Lines Limited, Intervenors.**

**Civ. A. No. 1967–118.**

United States District Court
W. D. New York.

March 14, 1968.

Ronald N. Cobert, Washington, D. C., Benjamin A. Galperin, Buffalo, N. Y. (Grove, Jaskiewicz & Gilliam, Washington, D. C., of counsel), for plaintiff.

Henry F. Rush, Jr., Attorney, Interstate Commerce Commission, Washington, D. C. (Donald F. Turner, Asst. Atty. Gen., John H. D. Wigger, Attorney, Justice Department, Washington, D. C., John T. Curtin, U. S. Atty., Buffalo, N. Y., on the brief for the United States; Robert W. Ginnane, General Counsel, on the brief for the Interstate Commerce Commission), for defendants.

William J. Hirsch, Buffalo, N. Y., for intervenors.

Before FEINBERG, Circuit Judge, BURKE, Chief Judge and HENDERSON, District Judge.

FEINBERG, Circuit Judge:

This is an action to set aside an order of the Interstate Commerce Commission, which denied two applications of plaintiff Homer White, Inc., one pursuant to section 206(a) (7) (A) of the Interstate Commerce Act, 49 U.S.C. § 306(a) (7) (A), for a "grandfather" certificate of registration authorizing plaintiff to continue operating in interstate and foreign commerce, and the other for an initial certificate of interstate and foreign commerce motor carrier operating authority under section 207 of the Act, 49 U.S.C. § 307. For reasons given below, we deny the relief sought.

A 1962 change in the Interstate Commerce Act provides the background for the key issues in this case. Prior to 1962, a motor carrier operating solely within the confines of a state could easily obtain the incidental right to transport property moving in interstate or foreign commerce under the second proviso of what was then section 206(a) (1), 49 U.S.C. § 306(a) (1), commonly referred to as the "second proviso." [1] All that the intrastate carrier had to do was file with the Interstate Commerce Commission a certified copy of its intrastate authorization from a state commission

---

I. The "second proviso" stated:
   And provided further, That this paragraph shall not be so construed as to require any such carrier lawfully engaged in operation solely within any State to obtain from the Commission a certificate authorizing the transportation by such carrier of passengers or property in interstate or foreign commerce between places within such State if there be a board in such State having authority to grant or approve such certificates and if such carrier has obtained such certificate from such board. Such transportation shall, however, be otherwise subject to the jurisdiction of the Commission under this chapter.

together with a notice of intent to operate in interstate and foreign commerce. As indicated in greater detail below, this privilege was available to an intrastate carrier as long as it was not so affiliated with another carrier operating in interstate or foreign commerce that the two carriers were under common control. Because of abuses of the second proviso exemption, this simple statutory scheme was changed in 1962. Significantly for our purposes, the new statute, sections 206(a) (6), (7), 49 U.S.C. §§ 306(a) (6), (7), accorded "grandfather" status to carriers that were lawfully operating under the second proviso as of October 15, 1962. This case is primarily concerned with whether Homer White, Inc., was lawfully operating on and before that day.

Plaintiff is a motor common carrier of property, which for many years has held a New York State certificate authorizing it to operate in upstate New York. In March 1951, plaintiff utilized the simple second proviso procedure then in effect; its filing was accepted for registration by the Interstate Commerce Commission. Accordingly, plaintiff was empowered to carry goods moving in interstate and foreign commerce on routes within New York upon which it had state operating authorization. In December 1955, Glenn A. Scobie purchased all of plaintiff's outstanding stock. Shortly thereafter, he acquired a twenty-five per cent common stock interest in Scobie's Transport, Ltd. (Scobie's), a Canadian-based carrier. Even before acquiring this stock, and at all times relevant here, he was employed by Scobie's for the solicitation of international traffic at a salary of $10,000 a year. As the name would indicate, Scobie's was family owned, the other shareholders being Glenn's father and two brothers.

In 1961, Scobie's, which had been interchanging traffic with United States carriers in United States customs compounds at Buffalo and Niagara Falls since 1926, filed an application with the Commission for authority to serve the two cities and North Tonawanda, New York, also near the Canadian border. As a result, the relationship between Scobie's and plaintiff was brought to the Commission's attention by competing carriers protesting the grant of authority sought by Scobie's. The Commission granted Scobie's authority to operate into the United States to Buffalo and Niagara Falls for the purpose of interchanging Canadian traffic with connecting American carriers. Overland Express, Ltd., Extension—New York Points, 92 M.C.C. 757 (1963). The final certificate was withheld, however, pending determination of the control relationship then existing between Scobie's and plaintiff Homer White, Inc. As to Scobie's, this question became moot in March 1964, when the Scobie family sold Scobie's to a subsidiary of the Canadian National Railway.

However, plaintiff's status still remained to be settled. During the period while Scobie's application was pending, Congress repealed the second proviso of section 206(a) (1) of the Act, referred to above, and enacted sections 206(a) (6), (7). These sections continued the second proviso exemption, codified many procedural and substantive developments, and granted "grandfather" status to carriers operating under the second proviso as of October 15, 1962. Such carriers were required, however, to apply for authorization to continue their operations; under section 206(a) (7) (A), approval was conditioned upon the carrier's showing, among other things, that it was

> in operation solely within a single State as a common carrier by motor vehicle in intrastate commerce (excluding persons controlled by, controlling, or under a common control with, a carrier engaged in operations outside such State) * * *.

In January 1963, plaintiff duly applied for a registration certificate pursuant to the "grandfather" provision. Plaintiff subsequently also sought an initial certificate of public convenience and necessity under section 207 of the Act, in the event the Commission denied it "grandfather" status.

Following extensive hearings, the examiner recommended denial of plaintiff's applications. As to the "grandfather" application, the examiner concluded that on and before October 15, 1962, plaintiff was under common control and managed in a common interest with Scobie's; plaintiff was therefore ineligible under section 206(a) (7) (A). As to plaintiff's other application, the examiner concluded that plaintiff had failed to sustain its burden of proving that the operation for which it sought a certificate was, or would be, required by the present or future public convenience and necessity. By order of March 8, 1967, the Commission affirmed and adopted the conclusions and findings of the examiner and adopted his recommended order denying plaintiff's applications. Homer White, Inc., "Grandfather" Registration Application, 105 M.C.C. 255 (1967). The filing by plaintiff of its complaint in the United States District Court for the Western District of New York required the convening of this three-judge court.

Plaintiff's primary contention is that under the terms of section 206(a) (7) (A), Scobie's is not a "carrier engaged in operations outside" New York. If this is so, then the fact of common control becomes irrelevant and Homer White, Inc., is entitled to registration. Cf. Security Transp. Co.—Purchase—Security Truck Line, 93 M.C.C. 385 (1963); Monon Transp. Corp. Common Carrier Registration Application, 44 M.C.C. 325 (1945). Plaintiff points to section 203(a) (14) of the Act, 49 U.S.C. § 303(a) (14), which defines "common carrier by motor vehicle" as:

> any person which holds itself out to the general public to engage in the transportation by motor vehicle in interstate or foreign commerce of passengers or property * * *.

It is apparently agreed that Scobie's is not in "interstate commerce." Plaintiff argues that Scobie's is not in "foreign commerce" either, at least for these purposes; the latter term is defined in section 203(a) (11) as commerce "between any place in the United States and any place in a foreign country * * *." 49 U.S.C. § 303(a) (11).

Plaintiff's argument actually is that for the common control prohibition of section 206(a) (7) (A) to apply, the other carrier (Scobie's) must itself be subject to Interstate Commerce Commission jurisdiction and, in considering whether it is, we must eliminate any activities in the state in which the second proviso carrier (Homer White, Inc.) operates. To make its point dramatic, plaintiff argues that otherwise the Commission could prohibit common control of an intrastate carrier and one entirely in a foreign country, e. g., England, a result not intended by Congress.[2] We may assume arguendo the first part of this proposition, that Scobie's must itself be subject to Commission jurisdiction. However, this is irrelevant because the problem plaintiff would pose is not before us; Scobie's is not a carrier operating solely in Canada. Scobie's operates between Canada and locations in New York State, as the examiner properly found. Overland Express, Ltd., Extension—New York Points, 92 M.C.C. 757 (1963). We see no reason to ignore that fact or to assume the contrary and deal with the problems that might thus be presented. Cf. Canada Packers, Ltd. v. Atchison, T. & S. F. Ry., 385 U.S. 182, 87 S.Ct. 359, 17 L.Ed.2d 281 (1966) (per curiam). The crucial issue is the second part of plaintiff's argument, that in deciding whether the other carrier (Scobie's) is subject to Commission jurisdiction, we cannot consider that carrier's activities in the state in which the second proviso carrier operates. To assess

---

2. Plaintiff's reply brief states:

> To carry the Commission's reasoning in the instant case to its extreme, it would appear that the federal agency would have disqualified Homer White if Scobies had been operating in Great Britain or a number of other foreign lands. Such is ridiculous but it must be the logical conclusion of the Commission's decision.

this contention, we must examine the purpose of the 1962 amendments.

When the Motor Carrier Act was passed in 1935, it was thought that transportation by a solely intrastate carrier of property moving within the confines of a state but in interstate or foreign commerce would be incidental to that carrier's intrastate operations and relatively unimportant. See H.R.Rep. No. 1090, 87th Cong., 2d Sess. (1961), 2 1962 U.S.Code Cong. & Admin.News, 3165, 3167–3168. Thus, the second proviso allowed intrastate carriers with state authorization to operate within their states without duplicative federal regulation. See Baggett Transp. Co.— Purchase—W. A. Bishop, 36 M.C.C. 659 (1941). However, the basic assumption proved incorrect and the tail began to wag the dog. Many intrastate operators became important links in the routes of connecting carriers extensively engaged in interstate and foreign commerce; state certificates were often obtained only to provide a link in the chain. Thus, many rights to engage in interstate and foreign commerce came into being without Commission consideration of public convenience and necessity. The chairman of the House subcommittee that considered the 1962 amendments noted that:

> In fact, the ICC has advised the committee that there are today some 3,100 carriers registered with the ICC who have obtained their interstate operating rights under the provisions of section 206(a) (1) of the act. This was not contemplated by the 1935 act.[3]

Similarly, Congressman Harris, Chairman of the House Committee on Interstate and Foreign Commerce, pointed out what was happening:

> Let me illustrate the situation by giving an example. Let us take a motor common carrier with interstate operating authority between New Haven, Conn., and Little Rock, Ark. This carrier would like to have a larger gathering area around New Haven. He finds that he cannot prove to the satisfaction of the ICC a need for enlarging his gathering area, because there are other interstate motor carriers now adequately serving the surrounding territory. So he induces his brother, or uncle to buy an intrastate certificate to operate in Connecticut. The brother or uncle then registers this certificate with the ICC, and obtains the right to handle interstate shipments within the State of Connecticut covering not only the city of New Haven but perhaps the entire State of Connecticut. Thus, the two individuals, working together in this manner, can create what is tantamount to a new interstate service without ever having to prove the need for the enlarged service before the ICC.[4]

By placing intrastate and interstate carriers under common control, the interstate carrier's authorized routes could be expanded within the confines of individual states without meeting the usual requirement of public convenience and necessity.

The initial response to this practice was a Commission holding that such an interlock disqualified the intrastate carrier from second proviso operations; the carrier was then no longer operating "solely" within a single state. See, e. g., Baggett Transp. Co., supra, 36 M.C.C. at 664; Sandhaus, Eligibility—Second Proviso, 73 M.C.C. 157, 159 (1957). This decisional route proved inadequate; state certificates were filed and registration usually followed as a matter of course. See generally Dugan Extension —Certificate of Registration, 99 M.C.C. 557, 559–562 (1965). The 1962 enactment of section 206(a) (7) sought to halt this practice by explicitly barring such common control relationships and by requiring re-registration to screen intrastate carrier ownerships.

It is against this background that we must consider plaintiff's narrow reading

---

3.  108 Cong.Rec. 1361 (1962) (remarks of Congressman Williams).

4.  108 Cong.Rec. 1358 (1962).

of the prohibition of common control contained in section 206(a) (7) (A). As plaintiff construes it, the section forbids a New York second proviso intrastate carrier from being under common control with another carrier only if the latter engages in interstate or foreign commerce, subject to the jurisdiction of the Interstate Commerce Commission, in a location other than New York. And plaintiff points out that Scobie's does not operate within the jurisdiction of the Commission except in New York. In other words, plaintiff reads the statutory prohibition of control of Homer White, Inc., by a "carrier engaged in operations outside [New York]" as though it included the phrase, "which operations are themselves within the jurisdiction of the Commission." Thus, as we understand plaintiff's argument, the section prevents a Canadian company from achieving common control with a New York second proviso carrier if the Canadian company also transports goods to Pennsylvania, but permits such common control if the Canadian company's only business in the United States is transporting goods into New York. The simple response to this contention is that the language of the section is not so limited. Cf. Verbeem v. United States, 154 F.Supp. 431, 433 (E.D.Mich.1957), aff'd per curiam sub. nom., Amlin v. Verbeem, 356 U.S. 676, 78 S.Ct. 1006, 2 L.Ed.2d 1072 (1958). Such a construction would obviously reduce Commission supervision of improper extension of interstate operating authority precisely in those situations in which it is most likely to occur. Cf. United States v. Marshall Transp. Co., 322 U.S. 31, 64 S.Ct. 899, 88 L.Ed. 1110 (1944). Both the language of section 206(a) (7) (A) and its legislative history fail to support the distinction plaintiff urges. Moreover, plaintiff's reliance on other Commission opinions is misplaced; they establish only that the term "carrier" in the former second proviso and under the relevant 1962 amendments means "motor" carrier, see Security Transp. Co.—Purchase —Security Truck Line, 93 M.C.C. 385

(1963); Monon Transp. Corp. Common Carrier Registration Application, 44 M.C.C. 325 (1945), and that the carriage must be of a regular commercial nature. See Howard's Express, Inc.— Purchase—Exchange Trucking Corp., 97 M.C.C. 341 (1965) (mail); Peters Common Carrier Application, 73 M.C.C. 331 (1957) (exempt agricultural commodities). In fact, in one prior case involving similar facts, the Commission stated that second proviso operations were improper. See Fess Transp. Ltd., Common Carrier Application, 86 M.C.C. 625, 630 (1961) (dictum), modified on other grounds, 91 M.C.C. 924 (1963). And a related question has also been decided consistently; a second proviso carrier cannot transport goods into a foreign country because the second proviso limits its operations to a single state. See Thomas Goodfellow, Inc., Common Carrier Application, 68 M.C.C. 672 (1956); Southwestern Motor Transp., Inc., Extension—Additional Routes, 61 M.C.C. 1 (1952).

We conclude that since Scobie's operates in foreign commerce between New York and Canada, it is a carrier under the Act, and since its operations in Canada are clearly outside New York, the Commission correctly held that Scobie's was a "carrier engaged in operations outside" New York. Accordingly, if there was a common control relationship between Homer White, Inc. and Scobie's on or before October 15, 1962, plaintiff had no right to a grandfather registration. We thus turn to the question of control.

Plaintiff contends that the grounds upon which the Commission acted on the issue of control are not clearly disclosed and adequately sustained. Thus, plaintiff claims that it is not clear whether the examiner found that Glenn Scobie had actual control of Scobie's or the power to control. It is true that meaningful review requires that agency determination be on clearly stated grounds, see Beaney v. United States, 271 F.Supp. 692, 696 (W.D.N.Y.1967) (three-judge court), and authorities cit-

ed therein. Nevertheless, plaintiff's argument is without merit. The examiner explicitly stated that "the mere power to control * * * is sufficient to negative the [second] proviso benefit." Moreover, plaintiff misstates the issue, which is not whether Glenn Scobie, by himself, could control Scobie's in addition to plaintiff, but whether the Scobie family had such power. In other words, the proper question is whether both Scobie's and plaintiff could be controlled in a common interest. See Ashland Transfer & Storage Co.—Operations Under Second Proviso of 206(a) (1), 76 M.C.C. 537, 539 (1958).

■ This question is one of degree. While minor connections between carriers may be disregarded, it is not necessary to show affirmative domination of one carrier by another to support a finding of control. See Greyhound Corp. —Investigation of Control—Southern Ltd., Inc., 45 M.C.C. 59, 79 (1946). The facts here amply support a finding of common control. Of central importance is the family relationship of the managements of the two carriers. Although family ties may not be relied upon, without more, to decide questions of common control, they are to be given weight. See Norquist "Grandfather" Registration Application, 99 M.C.C. 501, 504 (1965). Glenn Scobie owned plaintiff corporation outright. The Scobie family owned Scobie's, and Glenn's father and then his brother managed that carrier. Glenn himself owned twenty-five per cent of Scobie's common stock; while this is not dispositive, it must be seriously considered.[5] See, e. g., Cooper Common Carrier Application, 51 M.C.C. 98 (1949), rev'd on other grounds, 52 M.C.C. 461 (1951). Moreover, Glenn occupied a position of importance at Scobie's, soliciting international traffic moving between the United States and Canada and receiving a salary of $10,000 per annum. The Commission has often considered such interlocking employment critical in finding control or management in a common interest. See, e. g., Sandhaus, Eligibility—Second Proviso, 73 M.C.C. 157 (1957). In Ashland Transfer & Storage Co.—Operations Under Second Proviso of Section 206(a) (1), 76 M.C.C. 537, 539 (1958), the Commission stated:

[I]f in any manner the operations of the two carriers can be joined in a common interest by a jointly employed person who is in a position to exercise substantial control over the complementary traffic affairs of the two carriers, that fact bars registration.

That description fits this case. While it is true that Glenn Scobie did not in fact manage all of Scobie's business, the power to control need neither be absolute, see id. at 539, nor even exercised. See Sandhaus, supra, 73 M.C.C. at 159; Refrigerated Transp., Inc., Determination of Eligibility to Operate Under the Second Proviso of Section 206(a) of the Interstate Commerce Act, 54 M.C.C. 625, 630 (1952).

Moreover, not only did the power exist to operate plaintiff and Scobie's in a common interest, but that power appears to have been exercised. For example, Scobie's shares a common terminal with plaintiff in Buffalo, and pays a flat monthly rental regardless of volume of use. More important, despite the presence of numerous carriers with which to interline, most of plaintiff's traffic was routed via Scobie's. The relationship provided, for all practical purposes, a single-line service in direct competition with others operating in the

5. As was noted in Greyhound Corp., supra, 45 M.C.C. at 79 n. 3:

Certain public utility regulatory statutes provide that "affiliation" or "affiliated interests" exist through ownership of 10 percent or more of voting capital stock * * * or where "substantial influence" over policies or activities is exercised, even without stock ownership * * *. See Natural Gas [Pipeline] Co. [of America] v. Slattery, 302 U.S. 300, [58 S.Ct. 199, 82 L.Ed. 276] [(1937)], involving an Illinois statute.

See, e. g., Public Utility Holding Company Act of 1935, 15 U.S.C. §§ 79b(a) (7) (A), 79b(a) (8) (A).

same territory—precisely the misuse of second proviso authority Congress sought to bar.

■■ Finally, we note the limits on our review of Commission fact determinations; only if a finding is not supported by substantial evidence on the record considered as a whole can it be upset. Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Moreover, plaintiff has the burden of proof in seeking to establish its eligibility for operations under the statute. See, e. g., Refrigerated Transp., supra, 54 M.C.C. at 630. It is true that the evidence of management or control in a common interest may not be quite as strong in this case as it has been in others. See, e. g., Norquist "Grandfather" Registration Application, 99 M.C.C. 501 (1965). But even were we disposed to disagree with the Commission, and we are not, there is sufficient evidence to insulate its findings from reversal.

We conclude that plaintiff was in a common control relationship with Scobie's prior to and on October 15, 1962; that, therefore, it was not lawfully operating under the second proviso, and that it was thus ineligible for "grandfather" registration under section 206 (a) (7) (A) both because it lacked second proviso status, see Valley Express, Inc. v. United States, 264 F.Supp. 1006 (W.D.Wisc.1966) (three-judge court), and because it was in an improper control relationship on the effective date of the statute.

Plaintiff's other contentions are similarly without merit. The claim that the Commission erred in denying its application for an original certificate of public convenience and necessity was made in briefs and at oral argument in only perfunctory fashion. There was good reason for this, since the Commission's denial of this application was clearly justified. The examiner found plaintiff engaged in an illegal operation; it acquired no legally cognizable property interest because of its past unlawful activities.

This opinion incorporates findings of fact and conclusions of law. The complaint is dismissed; the outstanding restraining order is dissolved. Settle an appropriate order on notice.