UNITED PARCEL SERVICE, INC., an Ohio Corporation, United Parcel Service, Inc., a New York Corporation, and United Parcel Service, Inc., a Delaware Corporation, Petitioners,

v.

UNITED STATES of America and Interstate Commerce Commission, Respondents.

Arrow Carrier Corporation et al., Intervening Respondents.

No. 78–2446.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 25, 1979.

Decided Oct. 30, 1979.

Irving R. Segal, Philadelphia, Pa., for petitioners.

John McCarthy, Jr., ICC, Washington, D. C., for respondent-ICC.

A. David Millner, Fairfield, N. J., for intervening respondents.

Before SPRECHER and WOOD, Circuit Judges, and CAMPBELL, Senior District Judge.*

SPRECHER, Circuit Judge.

The three affected corporations sought review of the Interstate Commerce Commission's determination that a non-carrier holding company which owns all of the stock of two motor carrier subsidiaries that were operated as a single integrated carrier system would "acquire control" of the subsidiaries upon their merger under Section 5(2) of the Interstate Commerce Act, and would therefore become subject to partial regulation as a carrier under Section 5(4).

United Parcel Service of America (UPS-A), a Delaware corporation, is a holding company which owns all of the outstanding stock of United Parcel Service, Inc., a New York corporation (UPS-NY), operating as a motor common carrier in 13 Middle Atlantic and New England states, and all of the outstanding stock of United Parcel Service, Inc., an Ohio corporation (UPS-OH), operating as a motor common carrier in the remaining 35 mainland United States. In addition to controlling the two interstate carriers, UPS-A controls as subsidiaries motor carriers offering interstate retail deliveries in Pennsylvania, Florida, and Virginia, an air freight forwarder, and a bonded messenger service.

UPS-A has not been subject to Commission regulation heretofore because it acquired control of the two regulated carriers (UPS-NY and UPS-OH) prior to the effective date of the Motor Carrier Act of 1935.

UPS-NY, UPS-OH and UPS-A joined in an application to the Commission for authority under Section 5(2) of the Act to merge UPS-NY into UPS-OH. The Commission approved the proposed merger after finding that the merger constituted a transaction within the scope of Section 5(2) and was consistent with the public interest. The Commission further found that upon consummation of the merger, UPS-A would "acquire control" of the surviving corporation and become a carrier within the meaning of Section 5(4), subject to certain reporting and accounting requirements of the Act. 127 M.C.C. 292 (1978). UPS-A, UPS-OH and UPS-NY have petitioned for review of the Commission's order.

The Interstate Commerce Act was revised, codified and enacted, without substantive change, as subtitle IV of title 49 of the United States Code on October 17, 1978, shortly after the Commission entered the order appealed from here, which occurred on August 21, 1978. The new codification provides that an action taken under a law replaced by it shall be deemed to have been taken under the new codification.

Section 5(2)(a) now appears at 49 U.S.C. § 11343(a) and provides in pertinent part:

The following transactions involving carriers providing transportation subject to the jurisdiction of the Interstate Commerce Commission . . . may be carried out only with the approval and authorization of the Commission:

(1) consolidation or merger of the properties or franchises of at least 2

---

* Honorable William J. Campbell, United States Senior District Judge for the Northern District of Illinois, sitting by designation.

carriers into one corporation for the ownership, management, and operation of the previously separately owned properties.

\* \* \* \* \* \*

(4) acquisition of control of at least 2 carriers by a person that is not a carrier.

(5) acquisition of control of a carrier by a person that is not a carrier but that controls any number of carriers.

Section 5(4) now appears at 49 U.S.C. § 11348(a) and provides in pertinent part:

When the Interstate Commerce Commission approves and authorizes a transaction . . . in which a person not a carrier providing transportation subject to the jurisdiction of the Commission . . . acquires control of at least one carrier subject to the jurisdiction of the Commission, the person is subject, as a carrier, to the following provisions of this title that apply to the carrier being acquired by that person, to the extent specified by the Commission: . . .

In order that UPS–A become a carrier subject to partial regulation the following must occur: the "acquisition of control of a carrier by a person that is not a carrier but that controls any number of carriers" (49 U.S.C. § 11343(a)(5)) and "a person not a carrier . . . acquires control of at least one carrier" in a transaction authorized by the Commission (49 U.S.C. § 11348(a)).

Our ability to review the Commission's order is greatly circumscribed by *Alleghany Corporation v. Breswick & Co.,* 353 U.S. 151, 77 S.Ct. 763, 1 L.Ed.2d 726 (1957), where the Supreme Court in effect approved the Interstate Commerce Commission's holding that Alleghany, being in control of the New York Central Railroad, was a non-carrier "considered as a carrier" when a subsidiary of Central (the Big Four Railroad, whose stock was largely owned by Central) incorporated by merger its subsidiary (the Jeffersonville Railroad, whose stock was all owned by the Big Four). In our case we have one wholly-owned subsidiary merging into another wholly-owned subsidiary and

the parent is the non-carrier. In *Alleghany,* a wholly-owned subsidiary merged into its parent corporation, which was in turn largely owned by its own non-carrier parent. In both cases the parent (or ultimate parent in the case of *Alleghany*) was a non-carrier, held by the Commission to be a carrier for purposes of partial regulation by the Commission.

Although there is some factual difference, the reasoning employed by the majority of the Court in *Alleghany* appears to us to apply equally as well to this situation as it did to the *Alleghany* facts. In both cases, two subsidiaries telescoped into a single subsidiary—one vertically and the other laterally or horizontally. We shall examine these factual differences at greater length after we apply the broader principles of *Alleghany* to the present facts.

In the first place, the Court in *Alleghany* established the standard of appellate review for "this type of issue," saying:

In deciding this type of issue, of course, the finding of the Commission that a given transaction does or does not constitute a significant increase in the power of one company over another is not to be overruled so long as "there is warrant in the record for the judgment of the expert body . . . ." *Rochester Telephone Corp. v. United States,* 307 U.S. 125, 146, 59 S.Ct. 754, 764, 83 L.Ed. 1147.

353 U.S. at 169, 77 S.Ct. at 773–774.

Whether "there is warrant in the record" in the present case in turn depends upon the Supreme Court's language in *Alleghany* as to the "crux of each inquiry." The Court said:

The crux of each inquiry to determine whether there has been an "acquisition of control" is the nature of the change in relations between the companies whose proposed transaction is before the Commission for approval. Does the transaction accomplish a significant increase in the power of one over the other, for example, an increased voice in management or operation, or the ability to accomplish financial transactions or operational

changes with greater legal ease? This is the issue, and not the immediacy or remoteness of the parent from the proposed transaction, for, as we said in the *Marshall Transport* case,[1] the parent can always, by operating through subsidiaries, make itself more remote.

353 U.S. at 169, 77 S.Ct. at 773.

Specifically, in this case, has the Commission found and does the record show "the ability to accomplish financial transactions or operational changes with greater legal ease?"

The Commission concluded "that the transaction will allow UPS–A to accomplish financial transactions or operational changes with greater legal ease, as UPS–A itself contemplates, and thus will result in an acquisition of control on the part of UPS–A." 127 M.C.C. 292, 296 (1978).

The application to merge stated that "[t]he proposal is to merge the two carriers for reasons of corporate simplification," and "[t]he result of the merger . . . will be to achieve further corporate simplification . . . .."

The verified statement of a vice president of both UPS–NY and UPS–OH in support of the application included the following under the heading "Effects of the Merger":

Upon completion of the proposed merger, there will be only one I.C.C. regulated carrier, in place of two. This will simplify the corporate and accounting work, and reduce the number of filings required by the I.C.C. and other regulatory agencies. The economies in administration and regulation resulting from this corporate simplification are apparent.

The present joint line service between the two subsidiaries will be one single line service. There will be no effect on the manner in which the operation is conducted physically, or on service to the public. However, the regulatory requirements incident to interchange of equipment, and the inter-company accounting

problems resulting from such interchange, will be eliminated.

UPS–A stated that it "had expected by the proposed merger to simplify its corporate accounting and reporting work, and perhaps some of the tariff publishing work, as well as the regulatory chores of the Commission." Applicants' petition for reconsideration of report and order of Review Board Number 5 at page 15; quoted in 127 M.C.C. 292 at 296.

The conclusions of the Commission are warranted by the facts on the basis of the *Alleghany* standards and principles.

We now examine in somewhat more detail the petitioners' argument that *Alleghany* is factually distinguishable. The Supreme Court discussed the factual details in 353 U.S. at 170, 77 S.Ct. at 774.

While the immediate practical effects of the merger on the operation of the Jeffersonville might be small, even minimal, a merger is the ultimate in one company obtaining control over another. So long as the Jeffersonville existed as a separate company, there was always the possibility that the Big Four, through the Central, might sell, or be forced to divest itself of, the Jeffersonville stock, and that the control of the Jeffersonville might thus pass to another railroad. In considering this possibility, it is important to note that the Jeffersonville does not connect physically with the Big Four but connects with it only by virtue of the Big Four's trackage rights over the Baltimore & Ohio, and that the Jeffersonville, with its few miles of track, also connects with the Pennsylvania, Baltimore & Ohio, Louisville & Nashville, Illinois Central, and Chesapeake & Ohio Railroads.

The merger of the Jeffersonville into the Big Four virtually precludes any change in the relation of the Jeffersonville lines to the Central system. The Jeffersonville will be no more. In view

---

1. *United States v. Marshall Transport Co.,* 322 U.S. 31, 64 S.Ct. 899, 88 L.Ed. 1110 (1944) [footnote by this court].

of this, it cannot reasonably be said that there has been no increase in the power of the Big Four, the Central, and, through its relation with them, Alleghany over the Jeffersonville.

The petitioners emphasize the fact that both UPS–OH and UPS–NY are 100% owned by UPS–A, but it should be noted that Jeffersonville was also 100% owned. Alleghany controlled Central, Central controlled the Big Four, and the Big Four owned 100% of Jeffersonville. The Supreme Court considered the "immediacy or remoteness of the parent from the proposed transaction" not to be an issue. What was important was that "[t]he Jeffersonville will be no more" even as the UPS–NY will be no more. And as the Court said, "a merger is the ultimate in one company obtaining control over another."

Congress has also given us some view of its intention in regard to carrier mergers. In 49 U.S.C. § 11343(a)(1) Congress required Commission approval and authorization of the merger of two carriers into one corporation in those cases where no holding company non-carrier is involved.

Although we sympathize with the petitioners' arguments that Alleghany involved unique facts, that Alleghany itself sought carrier status and Commission control, that corporate simplification should be encouraged rather than discouraged, and that here UPS–A did not acquire control but only retained it, it appears to us that both Congress and the Supreme Court have determined these issues contrary to the petitioners' views and we are in no position to overrule either body.[2] It may be that only Congress or the Supreme Court can offer petitioners any relief.

We hold that the Commission was justified in finding that the merger of UPS–NY into UPS–OH involved an "acquisition of control" of UPS–NY by UPS–A within the meaning of Sections 5(2) and 5(4) of the Act.

The order of the Commission is affirmed.

AFFIRMED.

WILLIAM J. CAMPBELL, Senior District Judge, concurring.

I agree with the Court's conclusion that Alleghany Corporation v. Breswick & Co., 353 U.S. 151, 77 S.Ct. 763, 1 L.Ed.2d 726 (1957) controls this case. I therefore join in the result. I am compelled to add, however, that the portion of the Alleghany holding which defines an "acquisition of control" seems to stress form over substance. In Alleghany, as in the present case, the parent corporation controlled nothing upon completion of the merger that it did not control prior to the merger. As Justice Douglas noted in dissent, "one who has 'control,' . . . does not acquire it when he merely changes the method or means of its exercise." Id. at 176, 77 S.Ct. at 777. Perhaps the time has come for a re-examination of Alleghany in the light of more recent judicial pronouncements on the question of what constitutes corporate control.

---

2. For example, Mr. Justice Douglas stated in his dissent:

The merger was an intra-system rearrangement of properties that did not affect one whit Alleghany's "control" in the statutory sense of the Bridge Company. Before the merger Alleghany had "control" of the Bridge Company. It therefore did not "acquire control" but only retained it as a result of the merger.

353 U.S. at 177, 77 S.Ct. at 777. (emphasis in original). But the dissent obviously did not prevail.